

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>Luis P. Costas Elena y Hazell A. Russell McMillan<br><br>Peticionario | Certiorari<br><br>2011 TSPR 49<br><br>181 DPR _____ |

Número del Caso: CC - 2008 - 8

Fecha: 31 de marzo de 2011

Tribunal de Apelaciones:

Regió n Judicial de San Juan Panel IV

Jueza Ponente:

Hon. Mildred Pabón Charneco

Abogado de la Parte Peticionaria:

Lcdo. José A. Andreu Fuentes

Oficina de la Procuradora General:

Lcda. Maite D. Oronoz Rodríguez
Procuradora General Interina

Lcda. Luana R. Ramos Carrión
Procuradora General Auxiliar

Lcda. Ileana M. Oliver Falero
Procuradora General Auxiliar

Materia:      Art. 6050 y 6054(b)(1)del Código de Rentas Internas Supresión de Evidencia

Este docu    mento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


El Pueblo de Puerto Rico

    Recurrido

       v.

                           CC-2008-008

Luis P. Costas Elena, Hazell
A. Russell McMillan

    Peticionarios


SENTENCIA

En San Juan, Puerto Rico, a 31 de marzo de 2011.


Como parte de una investigación sobre posible evasión contributiva, el Departamento de Hacienda le hizo varios requerimientos al Banco Bilbao Vizcaya Argentaria (BBVA) y a otras instituciones financieras, entre ellas Charles Schwab, para que le indicaran y le facilitaran los números de cuentas bancarias de los peticionarios Luis Costas Elena y Hazel Russell McMillan, así como de las corporaciones Demeter Internacional, Diógenes International Consulting Corp., P.R. Agro-Terra International Corp., Embryo Service Inc., y Limones Agro-P.R. Inc.

Asimismo, con el propósito de determinar si se habían cometido delitos contributivos, la División de Evasión Contributiva del Departamento de Hacienda, de forma *ex parte*, solicitó al Tribunal de Primera Instancia que emitiera órdenes de registro de las cuentas bancarias de los peticionarios Costas Elena y Russell McMillan, y sus corporaciones. Para estas solicitudes, se invocó la facultad que le confiere al Secretario de Hacienda la Sección 6122(a) del Código de Rentas

Internas, 13 L.P.R.A. sec. 8121, para hacer investigaciones y solicitar documentos con el propósito de establecer la responsabilidad tributaria de un contribuyente.

El Tribunal de Primera Instancia expidió las órdenes de registro de las cuentas bancarias. El Departamento de Hacienda contrató para investigar el caso a la Contadora Pública Autorizada con práctica privada, Lydia E. Márquez Vázquez. Del registro realizado por el Departamento de Hacienda de las cuentas bancarias de los acusados y sus corporaciones en el Banco Bilbao Vizcaya (BBVA) y la institución Charles Schawb, se obtuvo la información que dio base a las acusaciones criminales radicadas en contra del señor Costas Elena y la señora Russell McMillan. Las acusaciones les imputan cuatro infracciones a la Sección 6050 del Código de Rentas Internas de Puerto Rico (evasión contributiva), 13 L.P.R.A. sec. 8055, y cuatro cargos por violación del Artículo 6054 (b)(1) del Código de Rentas Internas de Puerto Rico (perjurio al firmar planillas), 13 L.P.R.A. sec. 8059.

Los peticionarios Costas Elena y Russell McMillan presentaron una moción de supresión del testimonio de la CPA Márquez Vázquez. Alegaron que como la testigo no era empleada o funcionaria del Departamento de Hacienda, ésta no tenía autoridad en ley para examinar e investigar las planillas de contribución sobre ingresos de los acusados y que, por el contrario, sus actuaciones constituían una violación expresa de la ley y la reglamentación aplicable. Los peticionarios adujeron que la ley y la reglamentación en cuestión sólo permite que sean ciertos empleados o funcionarios públicos los únicos que tienen facultad para examinar e investigar una planilla de contribución sobre ingresos de un contribuyente en Puerto Rico.

Por lo anterior, los peticionarios solicitaron la supresión del testimonio de la CPA Márquez Vázquez en el juicio en su fondo del presente caso ante el supuesto de que era el resultado de información obtenida ilegalmente. Los peticionarios también solicitaron la supresión de la evidencia documental obtenida. Argumentaron que no fueron notificados del requerimiento de los documentos bancarios y que la información bancaria fue adquirida sin mediar una orden judicial.

El Tribunal de Primera Instancia declaró con lugar la moción de supresión en cuanto a toda la evidencia obtenida por el Estado mediante el registro de las cuentas bancarias personales de los peticionarios. En cambio, el foro primario determinó que el requerimiento del número de las cuentas bancarias de los peticionarios y las corporaciones no fue irrazonable ni contrario a

derecho, ya que éstos no albergaban una expectativa de intimidad sobre el número de las cuentas bancarias. Además, el tribunal resolvió que los peticionarios no contaban con legitimación activa para invocar la regla de exclusión en cuanto a las cuentas bancarias de las corporaciones, ya que ese es un derecho que únicamente puede ser invocado por las corporaciones, como únicas personas agraviadas. Por último, el tribunal no suprimió el testimonio de la CPA Márquez Vázquez porque entendió que el Secretario de Hacienda tiene autoridad en ley para otorgar contratos de servicios profesionales o consultivos a individuos y entidades privadas para que le asistan en su función investigativa, según la Ley Núm. 237 de 31 de agosto de 2004, 3 L.P.R.A. secs. 8611-8615.

Inconformes, los peticionarios acudieron mediante *certiorari* al Tribunal de Apelaciones. Éste coincidió con el razonamiento del Tribunal de Primera Instancia y denegó la expedición del auto solicitado.

Entonces, los peticionarios recurrieron ante nos de la resolución del foro apelativo intermedio y el 28 de abril de 2008 expedimos el auto de *certiorari*. Con los alegatos de ambas partes, estamos en posición de resolver.

Como el Tribunal está igualmente dividido, se confirma la resolución del Tribunal de Apelaciones y se devuelve el caso al Tribunal de Primera Instancia para procedimientos ulteriores compatibles con lo resuelto aquí.

Lo acordó y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Martínez Torres emite una opinión de conformidad a la cual se unen los Jueces Asociados señores Kolthoff Caraballo y Rivera García. La Jueza Asociada señora Fiol Matta emite una opinión disidente a la cual se une el Juez Presidente señor Hernández Denton. La Juez Asociada señora Rodríguez Rodríguez disiente sin opinión escrita. La Jueza Asociada señora Pabón Charneco no interviene.


Aida I. Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

       v.

                                  CC-2008-008

Luis P. Costas Elena, Hazell
A. Russell McMillan

    Peticionarios

Opinión de conformidad emitida por el Juez Asociado señor MARTÍNEZ TORRES, a la que se unen los Jueces Asociados señores KOLTHOFF CARABALLO y RIVERA GARCÍA

En San Juan, Puerto Rico, a 31 de marzo de 2011.

Una vez más tenemos ante nuestra consideración la razonabilidad del requerimiento de documentos en manos de un tercero. Nos corresponde determinar quiénes tienen legitimación activa para solicitar la supresión de unos documentos obtenidos de las cuentas bancarias de unas corporaciones contra las que no hay acusación alguna. Los acusados son sus únicos accionistas, los peticionarios, en su carácter personal. Asimismo, nos corresponde determinar si dentro del amplio poder investigativo que ostenta el Secretario de Hacienda, éste puede subcontratar para la investigación de planillas de contribución sobre ingresos.

Evaluadas las controversias, concluimos que los peticionarios no cuentan con legitimación activa para solicitar la supresión de la evidencia obtenida de las cuentas bancarias corporativas, ya que carecen de una expectativa legítima de intimidad sobre dichas cuentas. De igual forma, determinamos que el Secretario de Hacienda cuenta con la facultad de contratar servicios profesionales o consultivos para evaluar irregularidades en las planillas de los contribuyentes. Por consiguiente, estamos conformes con la confirmación del dictamen del Tribunal de Apelaciones.

I

Las Comisiones de Hacienda y de Agricultura de la Cámara de Representantes, realizaron una investigación sobre alegadas irregularidades en la otorgación de créditos contributivos agrícolas. De dicha investigación legislativa, la Cámara de Representantes refirió un informe al Departamento de Justicia y al Departamento de Hacienda para la investigación de posibles delitos sobre evasión contributiva. En el referido informe legislativo, se estableció la posible comisión de delitos contributivos por parte de los acusados-peticionarios, Luis P. Costas Elena y Hazel A. Russell McMillan. La entonces Secretaria de Justicia, Hon. Anabelle Rodríguez Rodríguez refirió el asunto al Departamento de Hacienda para la investigación inicial de los posibles delitos contributivos. El Departamento de Hacienda le hizo varios

requerimientos al Banco Bilbao Vizcaya Argentaria (BBVA) y a otras instituciones financieras, entre ellas Charles Schwab, para que le indicaran y le facilitaran los números de cuentas bancarias de los acusados-peticionarios Costas Elena y Russell McMillan, así como de las corporaciones Demeter Internacional, Diógenes International Consulting Corp., P.R. Agro-Terra International Corp., Embryo Service Inc., y Limones Agro-P.R. Inc.

Asimismo, con el propósito de determinar si los peticionarios Costas Elena y Russell McMillan, y sus corporaciones, habían cometido delitos contributivos, la División de Evasión Contributiva del Departamento de Hacienda, de forma *ex parte*, solicitó al Tribunal de Primera Instancia que emitiera órdenes de registro de las cuentas bancarias de los acusados-peticionarios y sus corporaciones. Para estas solicitudes, se invocó la facultad que le confiere al Secretario de Hacienda la Sección 6122(a) del Código de Rentas Internas, 13 L.P.R.A. sec. 8121, para hacer investigaciones y solicitar documentos con el objetivo de establecer la responsabilidad tributaria de un contribuyente.[1]

---

[1] El Departamento de Hacienda solicitó la orden judicial para obtener toda la información bancaria relacionada con los contribuyentes, es decir: cuentas de ahorro, cuentas corrientes, certificados de ahorros y de depósitos, tarjetas de crédito, préstamos personales, hipotecarios o comerciales, cajas de seguridad, contratos de arrendamiento de vehículos, cuentas de *securities broker* y cualquier otra información relacionada.

Estas solicitudes estuvieron predicadas en una declaración jurada prestada por la Agente Especial Fiscal de Evasión Contributiva del Departamento de Hacienda, Sra. Luz Yolanda Bonilla López. En la declaración jurada, la Agente Especial declaró que se encontraba realizando una investigación de los acusados y sus corporaciones en virtud de la facultad que a esos fines le confiere el Código de Rentas Internas al Secretario de Hacienda. Asimismo, relató que la investigación era de carácter confidencial y que surgió a raíz de un referido de la Comisión de Hacienda y la Comisión de Agricultura de la Cámara de Representantes.

El Tribunal de Primera Instancia expidió las órdenes de registro de las cuentas bancarias. Del registro realizado por el Departamento de Hacienda de las cuentas bancarias de los acusados y sus corporaciones en el Banco Bilbao Vizcaya (BBVA) y la institución Charles Schawb, se obtuvo la información que dio base a las acusaciones criminales radicadas en contra del Sr. Luis Costas Elena y la Sra. Hazel A. Russell McMillan por el Ministerio Público el 4 de mayo de 2005. Las acusaciones les imputaban haber cometido delitos de evasión contributiva y de proveer información falsa en sus planillas de contribución sobre ingresos.[2]

_____

[2] El Ministerio Público acusó a los peticionarios por cuatro infracciones a la Sección 6050 del Código de Rentas Internas de Puerto Rico (evasión contributiva), 13 L.P.R.A. sec. 8055, y por cuatro cargos por violación del

(continúa...)

Por otra parte, para la investigación del caso, el Departamento de Hacienda contrató los servicios de la Contadora Pública Autorizada con práctica privada, Lydia E. Márquez Vázquez. A ésta se le encomendó la realización del examen, la investigación y el análisis de las planillas de contribución sobre ingresos de los acusados-peticionarios y la información obtenida del registro de las cuentas bancarias en cuestión. Del análisis e investigación realizada por la CPA Márquez Vázquez de las planillas sobre contribución sobre ingresos de los acusados, el Departamento de Hacienda concluyó que los peticionarios cometieron los delitos señalados anteriormente. La CPA Márquez Vázquez se convirtió así en testigo del Ministerio Público.

Luego de obtenida dicha información, los acusados-peticionarios presentaron una moción de supresión del testimonio de la CPA Márquez Vázquez. Alegaron que como la testigo no era empleada o funcionaria del Departamento de Hacienda, ésta no tenía autoridad en ley para examinar e investigar las planillas de contribución sobre ingresos de los acusados y que, por el contrario, sus actuaciones constituían una violación expresa de la ley y la

---

Artículo 6054 (b)(1) del Código de Rentas Internas de Puerto Rico (perjurio al firmar planillas), 13 L.P.R.A. sec. 8059. Se alega que los acusados evadieron su responsabilidad contributiva y sometieron planillas de contribución sobre ingresos con información falsa de 1999 a 2002. Se alega que ambos acusados-peticionarios dejaron de reportar ingresos ascendentes a $1,904,802 y evadieron el pago de $581,219 en impuestos.

reglamentación aplicable. Los peticionarios adujeron que la ley y la reglamentación en cuestión sólo permite que sean ciertos empleados o funcionarios públicos los únicos que tienen facultad para examinar e investigar una planilla de contribución sobre ingresos de un contribuyente en Puerto Rico.

En virtud de lo anterior, los peticionarios solicitaron la supresión del testimonio de la CPA Márquez Vázquez en el juicio en su fondo del presente caso ante el supuesto de que era el resultado de información obtenida ilegalmente. Los peticionarios también solicitaron la supresión de la evidencia documental obtenida. Argumentaron que no fueron notificados del requerimiento de los documentos bancarios y que la información bancaria fue adquirida sin mediar una orden judicial.

Por su parte, el Ministerio Público replicó ambas mociones. En cuanto a la solicitud de supresión del testimonio de la CPA, argumentó que el derecho invocado por los acusados no impide que una persona bajo contrato con el Departamento de Hacienda sea designada para evaluar la información contributiva de los individuos. En lo que respecta al asunto de la evidencia documental, el Ministerio Público alegó que los registros se hicieron con una orden judicial, por lo que procedía que la defensa probara que medió alguna de las razones que se

mencionan en la Regla 234 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, para suprimir la evidencia.

El 23 de noviembre de 2005, la defensa presentó una moción suplementaria en la que adujo que el registro para obtener los números de las cuentas bancarias se hizo sin que mediara orden judicial o notificación previa a los acusados. Asimismo, alegó que las órdenes de registro de las cuentas bancarias no se expidieron previa demostración de hechos concretos y particularizados o causa probable, por lo que eran ilegales.

El 17 de octubre de 2006, el Tribunal de Primera Instancia declaró con lugar la moción de supresión en cuanto a toda la evidencia obtenida por el Estado mediante el registro de las cuentas bancarias personales de los acusados. Razonó el foro primario, luego de un estudio del requerimiento de la solicitud de registro de documentos bancarios y la declaración jurada que la acompañaba, que el registro de las cuentas bancarias fue llevado a cabo mediante una orden judicial inválida porque no hubo causa probable para su expedición.

En cuanto a la supresión de la evidencia obtenida del registro de las cuentas bancarias de las corporaciones, el Tribunal de Primera Instancia determinó que el requerimiento del número de las cuentas bancarias de los acusados y las corporaciones no fue irrazonable ni contrario a derecho, ya que éstos no albergaban una expectativa de intimidad sobre el número de las cuentas

bancarias. En cuanto a las órdenes de registro de los documentos bancarios, el foro primario expuso que nada en las solicitudes de esas órdenes o en la declaración jurada acompañada, "alude de forma específica y detallada [a] las razones por las cuales los acusados estaban siendo investigados, ni [a] la necesidad de los documentos para la investigación". Por ello, el tribunal declaró con lugar la solicitud de supresión de evidencia de la información referente a las cuentas bancarias de los acusados. En cuanto a la solicitud de supresión de la evidencia relacionada con las cuentas bancarias de las corporaciones, el foro primario determinó que los peticionarios no contaban con legitimación activa para invocar la regla de exclusión en cuanto a las cuentas bancarias de las corporaciones, ya que ese es un derecho que únicamente puede ser invocado por la persona agraviada, a saber, las corporaciones.

Referente a la solicitud de supresión del testimonio de la CPA Márquez Vázquez, el Tribunal de Primera Instancia no dio paso a ella por entender que el Secretario de Hacienda tenía autoridad en ley para otorgar contratos de servicios profesionales o consultivos a individuos y entidades privadas, para que le asistan en su función investigativa. El foro primario sostuvo que "los departamentos, agencias e instrumentalidades de gobierno tienen facultad para otorgar contratos de servicios profesionales o

consultivos a individuos y entidades privadas en virtud de la Ley Núm. 237 de 31 de agosto de 2004, 3 L.P.R.A. secs. 8611-8615."

En reconsideración, el foro primario expresó que el argumento en cuanto a que los peticionarios podían cuestionar el registro de las cuentas bancarias de las corporaciones porque éstas son íntimas o familiares no se presentó oportunamente, aparte que los certificados de incorporación presentados no cumplían con lo exigido por ley a las corporaciones íntimas o familiares.

Inconformes, los acusados presentaron ante el Tribunal de Apelaciones una petición de *certiorari*. Allí solicitaron la revocación de aquella parte de la resolución emitida por el foro primario que denegó la supresión de la evidencia obtenida por el Estado como consecuencia del registro ilegal de las cuentas bancarias de las corporaciones pertenecientes a los acusados y que denegó la supresión del testimonio de la CPA Márquez Vázquez. El foro intermedio emitió una resolución en la que denegó la expedición del auto de *certiorari* solicitado, por coincidir con el Tribunal de Primera Instancia en que los comparecientes carecían de legitimación activa para solicitar la supresión de la evidencia obtenida de las cuentas bancarias corporativas. El foro apelativo sostuvo que no procedía la supresión del testimonio de la CPA Márquez Vázquez por los mismos fundamentos que entendió el foro primario.

Los acusados-peticionarios recurren ante nos y señalan que es errónea la determinación del foro apelativo intermedio que dispuso que carecen de legitimación activa para solicitar la supresión de los documentos obtenidos del registro de las cuentas bancarias de las corporaciones. Asimismo, cuestionan la admisión del testimonio de la CPA Lydia E. Márquez Vázquez como evidencia, ya que ésta no es empleada del Departamento de Hacienda sino una contratista independiente. El 28 de abril de 2008 expedimos el auto de *certiorari* y ambas partes presentaron sus alegatos.

II

"Como parte de la investigación que precede a la imputación judicial del delito, se recurre a procedimientos dirigidos a obtener evidencia física incriminatoria." O.E. Resumil de Sanfilippo, <u>Práctica jurídica de Puerto Rico: Derecho procesal penal</u>, 1ra ed., Equity, 1990, Tomo 1, Sec. 8.1, pág. 203. Uno de los medios para obtenerla es "practicar registros de personas o allanamientos de lugares con el propósito de registrar y/o incautarse de material que sirva como prueba para sostener las imputaciones." <u>Id</u>.

La Cuarta Enmienda a la Constitución de los Estados Unidos protege a los ciudadanos contra registros, allanamientos e incautaciones irrazonables. Específicamente dispone:

> No se violará el derecho del pueblo a la seguridad de sus personas, hogares, documentos

y pertenencias, contra registros y allanamientos irrazonables, y no se expedirá ningún mandamiento, sino a virtud de causa probable, apoyado por juramento o promesa, y que describa en detalle el lugar que ha de ser allanado, y las personas o cosas que han de ser detenidas o incautadas.

Const. E.E.U.U., Enm. 4, L.P.R.A. Tomo 1.

Dicha disposición establece el alcance mínimo de la protección homóloga contenida en el Art. II, Sec. 10 de la Constitución de Puerto Rico, L.P.R.A. Tomo 1. En RDT Const. Corp. v. Contralor I, 141 D.P.R. 424, 435 (1996), explicamos que anteriormente, para determinar si una investigación constituía un registro bajo la Cuarta Enmienda, se utilizaba el criterio de "posesión o propiedad". Es decir, para alegar una violación al amparo de esta norma, la persona agraviada debía demostrar que tenía un derecho propietario o la posesión efectiva sobre la cosa o el lugar registrado. Id.

A partir de la decisión del Tribunal Supremo de los Estados Unidos en Katz v. United States, 389 U.S. 347 (1967), el enfoque tomó otro giro y desde ese momento el criterio rector para evaluar si existe una violación del derecho consagrado en la Cuarta Enmienda es evaluar si la persona afectada alberga una expectativa de intimidad sobre el lugar o artículo a ser registrado y si tal expectativa es razonable a la luz de los criterios prevalecientes en la sociedad. RDT Const. Corp. v. Contralor I, supra, pág. 436. Véanse California v.

Ciraolo, 476 U.S. 207, 211 (1986); Smith v. Maryland, 442 U.S. 735, 740 (1979).

Para la expedición de órdenes de registro y allanamiento se ha establecido un procedimiento específico que requiere que las emitida la autoridad judicial. Resumil de Sanfilippo, op cit., Cap. 9., Sec. 9.1, pág. 212. Particularmente, la Constitución de Puerto Rico ha elevado a rango constitucional el derecho de excluir como prueba en los tribunales la evidencia obtenida en violación de la protección que establece la disposición constitucional. Resumil de Sanfilippo, op cit., Cap. 8., Sec. 8.1, pág. 204. En la última oración del Art. II, Sec. 10 de la Constitución está incluida expresamente la regla de exclusión. Dispone que la "[e]videncia obtenida en violación a esta sección será inadmisible en los tribunales." El desarrollo de esta regla en la jurisdicción federal ha sido un tanto distinto. Nació jurisprudencialmente en 1914 con la decisión emitida en Weeks v. United States, 232 U.S. 383 (1914). Véase, E.L. Chiesa Aponte, Derecho procesal penal: Etapa investigativa, Publs. JTS, San Juan, P.R., 2006, pág. 111.

La moción de supresión de evidencia es el mecanismo apropiado para evaluar "la determinación de admisibilidad de evidencia." Chiesa Aponte, op. cit., pág. 140. La Regla 234 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, regula la moción de supresión de evidencia. Dispone:

Regla 234. Allanamiento; moción de supresión de evidencia

La persona agraviada por un allanamiento o registro ilegal podrá solicitar del tribunal. la supresión de cualquier evidencia obtenida en virtud de tal allanamiento o registro, o la devolución de la propiedad, por cualquiera de los siguientes fundamentos:

(a) Que la propiedad fue ilegalmente ocupada sin orden de allanamiento o registro.

(b) Que la orden de allanamiento o registro es insuficiente de su propia faz.

(c) Que la propiedad ocupada o la persona o sitio registrado no corresponde a la descripción hecha en la orden de allanamiento o registro.

(d) Que no había causa probable para creer en la existencia de los fundamentos en que se basó la orden de allanamiento o registro.

(e) Que la orden de allanamiento fue librada o cumplimentada ilegalmente.

(f) Que es insuficiente cualquier declaración jurada que sirvió de base a la expedición de la orden de allanamiento porque lo afirmado bajo juramento en la declaración es falso, total o parcialmente.

.........................................

En virtud de la regla de exclusión, cuando la evidencia sea obtenida en violación del mandato constitucional y de lo dispuesto por esta regla, el tribunal deberá suprimir la evidencia obtenida. En consecuencia, ésta no será admisible en los tribunales como prueba sustantiva de la comisión de un delito. Pueblo v. Ramos Santos, 132 D.P.R. 363, 371 (1992). De esta forma, se logran los objetivos dispuestos en la regla de exclusión, que persiguen

(1) proveer un remedio efectivo a la víctima del registro y allanamiento irrazonable o ilegal; (2) evitar que el gobierno se beneficie de sus propios actos ilegales; (3) preservar la integridad del tribunal; y (4) disuadir a los oficiales del orden público a que en el futuro no repitan las acciones objeto de la impugnación.

Pueblo v. Ramos Santos, id., pág. 371.

Por ello, "[l]a presencia expresa de la regla de exclusión en la Constitución no tiene el efecto de 'standing' automático". Chiesa Aponte, op. cit., pág. 118. "Ese derecho constitucional expreso a la exclusión de evidencia… tiene un titular: la persona que ha sufrido la violación...". Id. Por tanto, "[n]o todo acusado beneficiado con la exclusión de la evidencia ilegalmente obtenida es la persona a quien la actuación gubernamental le violó sus derechos, bajo la sección 10, esto es, su derecho a la intimidad". Id., pág. 119.

Hemos señalado en el pasado que

la referida protección no opera automáticamente por el mero hecho de que ocurra una intervención del Estado con un individuo. La garantía constitucional protege fundamentalmente a las personas y no a lugares. **Para que ésta se active, es necesario determinar si existe un interés personal del individuo sobre el lugar u objeto allanado, incautado o registrado, de modo que exista una expectativa razonable de intimidad. Es esta expectativa razonable de intimidad la que es protegida por la disposición constitucional.** Por esto, si estamos ante la intervención del Estado con el individuo, hay que determinar si la persona, en efecto, tiene el derecho de abrigar la expectativa razonable de que su intimidad sea respetada para que entonces sea acreedor de la protección constitucional.

Rullán v. Fas Alzamora, 166 D.P.R. 742, 772 (2006) (énfasis suplido). Véanse, además,

Pueblo v. Loubriel, Suazo, 158 D.P.R. 371 (2003); E.L.A. v. P.R. Tel. Co., 114 D.P.R. 394 (1983); Pueblo v. Lebrón, 108 D.P.R. 324 (1979).

III

Al analizar una solicitud de supresión de evidencia, tanto en esta jurisdicción como en la federal, hay que analizar la legitimación activa del promovente. En la jurisdicción federal, el Tribunal Supremo de los Estados Unidos "ha resuelto que quien invoca la regla de exclusión ha de tener 'standing', en el sentido de que no basta con ser el beneficiado con la exclusión de la evidencia; quien invoca la regla de exclusión -que es el remedio contra la violación constitucional- ha de ser la persona a quien se le ha violado la protección 'sustantiva' por así decirlo". E.L. Chiesa, Los derechos de los acusados y la factura más ancha, 65 Rev. Jur. U.P.R. 83, 128-129 (1996). Véanse, además, Minnesota v. Olson, 495 U.S. 91 (1990); Rawlings v. Kentucky, 448 U.S. 98 (1980); United States v. Salvucci, 448 U.S. 83 (1980); Rakas v. Illinois, 439 U.S. 128 (1978). En esos mismos términos se expresa LaFave al disponer que "la evidencia adquirida en violación de la Cuarta Enmienda no es excluida automáticamente de los juicios criminales; un acusado con legitimación activa debe presentar una objeción a la presentación de esa evidencia". W.R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment, 4ta ed., Thomson West, 2004, Vol. 6, Sec. 11.2(a), pág. 35 (traducción nuestra).

Lo que esto significa es que

> sólo la persona quien ha sufrido la violación constitucional en relación a la protección contra detenciones, registros o incautaciones irrazonables, puede invocar la regla de exclusión, pues ésta no es sino el remedio que tiene quien sufre la violación de su derecho constitucional. Así, pues, no todo acusado que pudiera beneficiarse con la exclusión de la evidencia ilegalmente obtenida tiene "*standing*" o legitimación activa para solicitar la supresión de la evidencia.

Chiesa Aponte, op cit. pág. 114.

Como señaló el Tribunal Supremo de los Estados Unidos en Alderman v. United States, 394 U.S. 165, 171-172 (1969), "la supresión del producto de una violación de la Cuarta Enmienda puede instarse con éxito solo por aquellos cuyos derechos fueron violados por el registro en sí, no por aquellos que fueron agraviados únicamente por la presentación de la evidencia perjudicial" (traducción nuestra). Véase, además, Chiesa, op cit. pág. 114.

Por nuestra parte, hemos expresado que ante una solicitud de supresión de evidencia, hay que determinar: (1) si el acusado que la solicita tiene legitimidad para invocar el privilegio; (2) en ausencia de orden, si le era posible al Estado obtenerla sin comprometer la eficacia del registro o la seguridad de sus agentes; y (3) la razonabilidad del registro. Pueblo v. Ramos Santos, supra, pág. 371. Véase, además, Pueblo v. Lebrón, 108 D.P.R. 324, 328 (1979). También concluimos que "[u]na persona que se encuentra ilegalmente en un sitio no tiene

legitimación activa para reclamar el derecho contra un registro irrazonable garantizado constitucionalmente, pues no tiene expectativa de intimidad alguna". Pueblo v. Ramos Santos, supra, pág. 371. Estos pronunciamientos demuestran el reconocimiento por parte de este Tribunal del requisito en nuestro ordenamiento jurídico de legitimación activa para solicitar la supresión de evidencia bajo la Regla 234 de Procedimiento Criminal. A esa misma conclusión llega el profesor Ernesto Chiesa al señalar que "cualquier duda que había sobre el requisito de *standing*, en Puerto Rico, para invocar la regla de exclusión, desapareció con Pueblo v. Ramos Santos. Así pues, **no hay "factura más ancha" en cuanto a la exigencia de *standing*"**. Chiesa, Los derechos de los acusados y la factura más ancha, supra, págs. 128-129 (énfasis suplido).

Tras hacer alusión a nuestros pronunciamientos en Pueblo v. Vargas, 105 D.P.R. 335 (1976), en cuanto a la falta de legitimación activa del acusado para solicitar la supresión de evidencia, el profesor Chiesa concluye que "lo expresado por el Tribunal Supremo equivale a una exigencia de legitimación activa para el acusado promovente de una moción de supresión de evidencia". Chiesa, op. cit., pág. 118. Chiesa critica los pronunciamientos del Juez Asociado señor REBOLLO LÓPEZ en su Opinión concurrente, a la cual se unieron la entonces Juez Asociada señora NAVEIRA DE RODÓN y el entonces Juez

Asociado señor HERNÁNDEZ DENTON en Pueblo v. Rovira Ramos, 116 D.P.R. 945, 957 (1985), a los efectos de que "si el Estado pretende relacionar a un acusado con determinado material delictivo y así privarlo de su libertad con motivo de ello, dicho ciudadano debe tener el *derecho automático* de cuestionar la legalidad de la forma o manera en que el estado advino en posesión del referido material" (énfasis en el original). Sobre ese particular el profesor Chiesa opina:

> Esto no me parece persuasivo. La presencia expresa de la regla de exclusión en la Constitución no tiene el efecto de "*standing*" automático, aunque sí tiene la importantísima consecuencia de que no puede ser abolida por la jurisprudencia ni por la Asamblea Legislativa; se requeriría enmienda a la Constitución. Pero ese derecho constitucional expreso a la exclusión de evidencia es un derecho constitucional personal, que tiene un titular: la persona que ha sufrido la violación a la protección constitucional establecida en esa sección 10 de la Carta de Derechos. No todo acusado beneficiado con la exclusión de la evidencia ilegalmente obtenida es la persona a quien la actuación gubernamental le violó sus derechos bajo la sección 10, esto es, su derecho a la intimidad.
>
> Chiesa Aponte, op. cit., pág. 118.

La opinión disidente de la Jueza Asociada señora FIOL MATTA, a la cual se une el Juez Presidente señor HERNÁNDEZ DENTON, pretende resucitar el debate de Pueblo v. Rovira Ramos, supra, a pesar de que "[a] partir de Ramos Santos se acepta sin discusión la exigencia de '*standing*' para que un acusado solicite la supresión de evidencia por cualesquiera de los fundamentos establecidos en la Regla 234 de Procedimiento Criminal".

Chiesa, op. cit., pág. 119. Lo cierto es que la opinión del Juez Asociado señor REBOLLO LÓPEZ en Pueblo v. Rovira Ramos, supra, no obtuvo los votos necesarios para convertirse en una expresión de este Tribunal. Como expresamos en Ex Parte Delgado Hernández, 165 D.P.R. 170, 182-183 (2005): "Reiteradamente hemos sostenido que el Tribunal Supremo establece una norma *exclusivamente* mediante un dictamen sostenido por una opinión firmada o una opinión *per curiam*" (énfasis en el original).

El debate quedó adjudicado en Pueblo v. Ramos Santos, supra, con la norma de expectativa razonable de intimidad, que luego fue reafirmada, entre otros, en Pueblo v. Ortiz Rodríguez, 147 D.P.R. 433, 440 (1999), Pueblo v. Valenzuela Morel, 158 D.P.R. 526, 539 (2003) y Rullán v. Fas Alzamora, supra. No hay razón para apartarnos de esos precedentes. Impera aquí la doctrina de *stare decisis*. Véanse Arizona v. Gant, 129 S. Ct. 1710, 173 L.Ed.2d 485, 556 U.S. ___ (2009); Pueblo v. Díaz de León, Op. de 16 de septiembre de 2009, 2009 T.S.P.R. 142, 2009 J.T.S. 145, 176 D.P.R. ___ (2009); Pueblo v. Camacho Delgado, Op. de 27 de octubre de 2008, 2008 T.S.P.R. 174, 2008 J.T.S. 193, 175 D.P.R. ___ (2008).

Hacer lo contrario, en total abstracción de la realidad cotidiana del Puerto Rico del Siglo XXI, "convertiría la factura más ancha en la factura más costosa jamás pagada por el Pueblo de Puerto Rico". RDT

Const. Corp. v. Contralor I, supra, pág. 469 (Opinión concurrente del Juez Asociado señor NEGRÓN GARCÍA).

En conclusión, el *standing* o la legitimación activa es un requisito esencial para que el acusado pueda solicitar la supresión de la evidencia por cualquiera de los fundamentos dispuestos en la Regla 234 de Procedimiento Criminal, supra. Chiesa Aponte, op cit., pág. 119. "Dicha supresión se concederá luego de reconocerse la existencia de una expectativa razonable de intimidad." Id., pág. 120. Conscientes de la importancia de la legitimación activa de la persona que solicita la supresión de la evidencia, dejamos atrás el debate de Pueblo v. Rovira Ramos, supra, y señalamos en Pueblo v. Valenzuela Morell, supra, pág. 546 esc. 12, por voz del Juez Asociado señor REBOLLO LÓPEZ, que aunque el acusado hubiere solicitado la supresión de la prueba de cargo, dicha solicitud "no hubiese tenido éxito por la falta de un requisito que este Tribunal ha reputado como esencial: la legitimación activa, la cual sólo se confiere luego de reconocerse la existencia de una expectativa razonable de intimidad".

Por consiguiente, no es suficiente para solicitar la supresión de la evidencia ser el propietario de la cosa incautada, incluso aunque la incautación sea producto de un registro ilegal. Sería necesario acreditar una legítima expectativa de intimidad en relación con el

registro. Rawlings v. Kentucky, supra. Véase, además,

Chiesa Aponte, op. cit., pág. 115. Ahora bien,

> [l]a expectativa razonable de intimidad implica primero que la persona haya exhibido una expectativa subjetiva de intimidad. No se trata de una simple reserva mental, sino de una conducta de actos afirmativos que demuestren, inequívocamente, la intención de alojar dicha expectativa. Y segundo, esa expectativa individual, así demostrada, tiene que ser una que la sociedad reconozca como razonable.
>
> Pueblo v. Ortiz Rodríguez, 147 D.P.R. 433, 442 (1999).

IV

Los tribunales federales han sido renuentes a la hora de reconocerle un derecho de intimidad a las corporaciones. Ello es así ya que las garantías "puramente personales", como el privilegio contra la autoincriminación, no están disponibles para las corporaciones y otras organizaciones, pues la función histórica de la garantía está limitada a la protección de los individuos. Id. Por ello, se ha dicho que las corporaciones no pueden reclamar ninguna igualdad con los individuos en lo que respecta al disfrute del derecho a la intimidad. Véase FCC v. AT&T Inc., 562 U.S. ___ (2011). Éstas están investidas con atributos públicos. Ostentan el privilegio de operar como entidades artificiales y tienen un impacto colectivo en la sociedad. California Bankers Ass'n v. Shultz, 416 U.S. 21 (1974). Véase, además, W.M. Fletcher, Fletcher Cyclopedia of the Law of Corporations, Thomson West, 2008, Vol. 10, sec. 4957.10.

En First Nat'l Bank v. Bellotti, 435 U.S. 765, 778 esc. 14 (1978), el Tribunal Supremo federal reconoció que las garantías puramente personales no están disponibles para las corporaciones ni para otras organizaciones, y por lo tanto rehusó sostener que las corporaciones gozan de todos los derechos constitucionales que protegen a los individuos. Precisamente, el Tribunal llegó a esa conclusión por el supuesto de que la aplicación de una garantía constitucional a una corporación depende de la naturaleza, la historia y el propósito de esa garantía, y que de un análisis de esos factores se debía concluir que el derecho a la intimidad está conceptualizado para ser invocado únicamente por personas naturales. Id.

En iguales términos se expresó el Juez Presidente Marshall en el año 1819 cuando aseguró que "una corporación es un ente artificial, invisible, intangible y existente únicamente ante la ley." Dartmouth College v. Woodward, 4 Wheat. 518, 636 (1819) (traducción nuestra). Por esa razón, las corporaciones no tienen derecho a las garantías puramente personales cuya función histórica ha sido limitada para la protección de los individuos. First Nat'l Bank v. Bellotti, supra, pág. 779 n. 14. Por consiguiente, varias decisiones reafirman que una corporación no goza del privilegio subyacente en la Quinta Enmienda a favor de la no autoincriminación, ni muchos menos del derecho a la intimidad. United States v.

Morton Salt Co., supra; Wilson v. United States, 221 U.S. 361 (1911).

> *On the contrary, treatises in print around the time that Congress drafted the exemptions at hand reflect the understanding that the specific concept of "personal privacy," at least as a matter of common law, did not apply to corporations. See Restatement (Second) of Torts §652I, Comment c (1976) ("A corporation, partnership or unincorporated association has no personal right of privacy"); W. Prosser, Law of Torts §97, pp. 641-642 (2d ed. 1955) ("A corporation or a partnership as such can have no personal privacy, although it seems clear that it may have an exclusive right to its name and its business prestige" (footnotes omitted)); cf. id., §112, at 843-844 (3d ed. 1964) ("It seems to be generally agreed that the right of privacy is one pertaining only to individuals, and that a corporation or a partnership cannot claim it as such" (footnotes omitted)); id., §117, at 815 (4th ed. 1971) (same).*

> FCC v. AT&T Inc., supra, pág. ___.

Como entidades artificiales dotadas con atributos públicos, las corporaciones tienen una expectativa de intimidad reducida cuando se trata de investigaciones públicas hechas en un contexto regulatorio. Fletcher, op. cit., sec. 4957.10. Las agencias del orden público tienen un derecho legítimo de asegurar que la actividad corporativa se lleve a cabo conforme a la ley y el interés público. Id.

A diferencia de las personas naturales, las corporaciones no tienen una vida íntima, sueños y pensamientos cuya privacidad desean proteger. Los atributos públicos de las corporaciones reducen la razonabilidad de su expectativa limitada de intimidad.

Id. Sin embargo, la naturaleza y el propósito de la entidad corporativa, así como la naturaleza del interés que se pretende proteger, determinará si ante circunstancias particulares la corporación tiene un interés de intimidad que se pueda hacer valer. Id. Después de todo, las corporaciones comparten con los individuos el interés de mantener cierta información fuera del alcance del público general. En cambio, a diferencia de las personas naturales, las corporaciones son entidades altamente reglamentadas, cuya existencia está subordinada al cumplimiento de requisitos estatutarios que van dirigidos a proteger el interés público.

En nuestra jurisdicción hemos afirmado que "[a]unque en el caso de las corporaciones, la naturaleza de la expectativa de intimidad es menor que la que tienen las personas, no por ello están desprovistas de toda protección contra intervenciones irrazonables y arbitrarias por parte del Estado". RDT Const. Corp. v. Contralor I, supra, pág. 442. En ese caso reconocimos que los clientes de un banco tienen una expectativa de intimidad sobre la información que la institución bancaria posee sobre ellos. Asimismo, a las corporaciones les cobija la protección del Art. II, Sec. 10 de nuestra Constitución. RDT Const. Corp. v. Contralor I, supra, pág. 442; E.L.A. v. Coca Cola Bott. Co., supra, pág. 209. También les protege la Cuarta Enmienda a la Constitución

Federal. Véanse, Go-Barth Co. v. United States, 282 U.S. 344 (1931); Silverthorne Lumber Co. v United States, 251 U.S. 385 (1920); Hale v. Henkel, 201 U.S. 43 (1906).

V

En la jurisdicción federal, la jurisprudencia indica que cuando se analiza quién tiene legitimación activa para solicitar la supresión de una evidencia obtenida de una corporación, la pregunta fundamental es si el acusado tiene una expectativa de intimidad protegida en el lugar en el que se realizó el registro o allanamiento. LaFave, op cit., pág. 178. Para determinar si existe esa expectativa, se debe tomar en consideración si el acusado estaba presente al momento de la búsqueda y si tenía algún interés en el lugar registrado o los artículos allanados. Id.

En Puerto Rico no hemos tenido la oportunidad de analizar directamente la legitimación activa de los oficiales de una corporación para solicitar la supresión de evidencia obtenida de las cuentas bancarias del ente corporativo. Sin embargo, en RDT Const. Corp. v. Contralor I, supra, tuvimos la oportunidad de analizar indirectamente la legitimación activa del oficial de una corporación y de la corporación en sí, para impugnar un requerimiento de documentos hecho a un tercero. Allí, la Contralora emitió varias citaciones formales a un banco para la producción de cierta evidencia documental sobre las cuentas bancarias de una corporación y de su

presidente y único accionista. Entre las controversias que nos planteamos estaba (1) si las personas y las corporaciones poseen un derecho de intimidad sobre la información que los bancos tienen sobre su vida privada, sus transacciones y sus negocios; y (2) dependiendo de lo anterior, si los demandantes poseían legitimación activa para impugnar el requerimiento de documentos que emitió la Contralora al banco. RDT Const. Corp. v. Contralor I, supra, pág. 435. Concluimos que el criterio decisivo para determinar si se trata de una información protegida constitucionalmente es la expectativa razonable de intimidad de los depositantes.

En la jurisdicción federal sí se ha analizado directamente el asunto de la legitimación activa de los accionistas de una corporación para solicitar la supresión de evidencia de documentos corporativos.[3] Así, por ejemplo, en Henzel v. United States, 296 F.2d 650 (5th Cir. 1961), el Tribunal Federal de Apelaciones para el Quinto Circuito expresó que no todo funcionario de una corporación puede atacar un registro o allanamiento en la propiedad corporativa por el mero hecho de que la

---

[3] Como puede apreciarse, estamos relatando el trato dado a este asunto por varios tribunales federales de todos los niveles. No estamos refiriéndonos en ese relato a la Constitución de Puerto Rico ni estamos citando decisiones de tribunales federales de jerarquía inferior como precedentes en nuestra jurisdicción.

evidencia obtenida pueda ser utilizada en su contra.[4]

Pocos años después, ese mismo tribunal expresó lo siguiente en United States v. Britt, 508 F.2d 1052 (5th Cir. 1975):

> *When a man chooses to avail himself of the privilege of doing business as a corporation, even though he is its sole shareholder, he may not vicariously take on the privilege of the corporation under the Fourth Amendment; documents which he could have protected from seizure, if they had been his own, may be used against him, no matter how they were obtained from the corporation. Its wrongs are not his wrongs; its immunity is not his immunity.[5]*

---

[4] El tribunal le reconoció legitimación activa al acusado ya que conforme a lo resuelto en Jones v. United States, 362 U.S. 257 (1960), no se le podía negar. En Jones, el Tribunal Supremo de los Estados Unidos sostuvo que era suficiente estar legalmente en el lugar registrado o allanado para tener legitimación activa para solicitar la supresión de evidencia. Esta postura fue posteriormente abandonada en ~~el caso~~ United States v. Salvucci, 448 U.S. 83 (1980). En Salvucci, el Tribunal Supremo sostuvo que el Estado puede impugnar la legitimación activa del acusado, pues éste puede acreditar su expectativa legítima de intimidad en la vista de supresión de evidencia sin que sea admisible en el juicio lo que pudiera surgir en su contra en esa vista. Chiesa Aponte, op. cit., págs. 115-116.

[5] Véanse, además, Lagow v. United States, 159 F.2d 245 (2d Cir. 1947) (El Tribunal Federal de Apelaciones para el Segundo Circuito razonó que cuando una persona escoge tomar el privilegio de hacer negocios como una corporación, aun cuando sea su único accionista, éste no puede invocar vicariamente el privilegio de la corporación al amparo de la Cuarta Enmienda); United States v. Carrol, 144 F. Supp. 939 (D.N.Y. 1956) (El Tribunal de Distrito Federal de New York expresó que un oficial de una corporación no es la parte adecuada para invocar cualquier derecho de la corporación en contra de un registro o allanamiento ilegal, aunque sea su único oficial corporativo o accionista principal). Cf., United States v. Morton Provision, Co., 294 F. Supp. 385 (D. Del. 1968)(Se le reconoció legitimación activa a los oficiales de una corporación para solicitar la supresión de evidencia obtenida de la cuentas corporativas ya que éstos pudieron demostrar que tenían una legítima

(continúa...)

El Tribunal Supremo de los Estados Unidos no se ha expresado directamente sobre la legitimación activa con la que cuentan los oficiales de una corporación para solicitar la supresión de evidencia corporativa. En cambio, ha analizado la legitimación activa de unos unionados para impugnar el registro y allanamiento de la oficina de un sindicato obrero. En Mancusi v. DeForte, 392 U.S. 364 (1968), la controversia principal fue si el área registrada era una en la que los acusados albergaban una expectativa de intimidad. Dependiendo de ello, se determinaría si ostentaban o no legitimación activa para solicitar la supresión de la evidencia incautada.

Tras un análisis de las particularidades de la oficina en la que ocurrió el registro, así como de las actividades y el tiempo que los miembros de la unión pasaban en ella, el Tribunal concluyó que los unionados tenían legitimación activa para solicitar la supresión. Sin embargo, el Tribunal Supremo no concluyó que en todas las circunstancias se ostentará legitimación activa. Ésta se reconocerá siempre y cuando el peticionario pueda

_____

expectativa de intimidad); y S. Plotkin Pail, General Issue: Dawn Raids Here at Home? The Danger of Vanishing Privacy Expectations for Corporate Employees, 17 St. Thomas L. Rev 265, 278-279 (2004) ("[C]ases finding in favor of employee standing seem to be largely limited to those circumstances where the defendant has either exclusive use of an area or a significant proprietary interest at stake… The Court in… United States v. Morton Provision Co. [294 F. Supp. 385 (D. Del. 1968)] pointed to similar proprietary factors in ultimately deciding to rule in favor of standing in those cases".)

demostrar una expectativa legítima de intimidad en el lugar registrado. LaFave, op. cit., pág. 181.

V

En nuestra jurisdicción, de ocurrir un registro o allanamiento ilegal en una cuenta bancaria corporativa, la corporación puede cuestionar dicha intrusión, en virtud del derecho que le hemos reconocido de invocar en su propio beneficio la cláusula constitucional contra los registros y allanamientos irrazonables. Ahora bien, en lo que respecta a la legitimación activa o standing de un accionista, presidente o empleado de una corporación para solicitar la supresión de la evidencia obtenida de una corporación, las decisiones de los tribunales federales apuntan a que hay legitimación activa cuando el acusado tiene una expectativa de intimidad protegida en el lugar en el que se realizó el registro o allanamiento. Por tanto, la mera posición en la estructura de la corporación no es suficiente para solicitar la supresión. Es decir, el hecho de que sea accionista, funcionario o empleado de la corporación no otorga al funcionario corporativo, sin más, un derecho automático para solicitar la supresión de la evidencia obtenida.

No vemos razón para adoptar una norma distinta. A diferencia de la jurisprudencia reseñada, en la que el lugar registrado y de donde se obtiene la evidencia es un local u oficina, en el caso particular que nos ocupa, el lugar registrado y de donde se obtuvo la información que

incrimina a los acusados, es un banco. En RDT Const. Corp. v. Contralor I, supra, resolvimos que las corporaciones tienen una expectativa de intimidad en la información que someten a los bancos. También señalamos que ante un registro de una cuenta bancaria corporativa, la corporación contaba con legitimación activa para impugnar la validez de dicho registro.

Fundamentándose en RDT Const. Corp. v. Contralor I, supra, los acusados-peticionarios argumentan que para solicitar la supresión de evidencia, solo se debe demostrar que se posee una expectativa de intimidad razonable sobre la evidencia obtenida, independientemente de dónde se obtenga. Por ello, razonan que la jurisprudencia federal dista de la norma establecida en nuestra jurisdicción, pues según éstos en RDT Const. Corp. v. Contralor I, supra, establecimos que "los depositantes están constitucionalmente protegidos contra registros ilegales de sus cuentas bancarias, pues lo determinante no es la titularidad del lugar donde se encuentre la evidencia,... sino la expectativa de intimidad de los depositantes". Petición de certiorari, pág. 17. Lo mismo argumenta la Juez Asociada señora FIOL MATTA en su opinión disidente. Identifica a los peticionarios como los depositantes.

Es cierto que los depositantes están constitucionalmente protegidos contra registros ilegales de sus cuentas bancarias. Esa norma no está en duda.

Ahora bien, RDT Const. Corp. v. Contralor I, supra, no es autoridad para sostener que cualquier persona podía solicitar la supresión de evidencia con tan solo invocar un argumento de intimidad sobre la información obtenida. Llegar a esa conclusión significaría que toda persona que se beneficie con la supresión de una evidencia, tendría automáticamente la legitimación activa para presentar una moción de supresión. Por el contrario, la norma imperante es que resulta insuficiente alegar un interés posesorio o propietario en la cosa incautada cuya supresión se solicita, sin más, para acreditarse legitimación activa. E.L. Chiesa Aponte, op cit., pág. 314.

En RDT Const. Corp. v. Contralor I, supra, en ningún momento le reconocimos al accionista una expectativa de intimidad en los documentos de la cuenta corporativa. Por el contrario, establecimos que la legitimación activa para impugnar el requerimiento de documentos hecho al banco correspondía a la persona afectada por el registro, que demostrara la expectativa de intimidad sobre la prueba incautada. Por esa razón, concluimos que el accionista tenía legitimación activa para impugnar el requerimiento de documentos hecho al banco sobre su cuenta bancaria, y asimismo la corporación tenía legitimación activa para impugnar el requerimiento de documentos hecho al banco sobre la suya.

A tenor con lo anterior, la corporación, como ente jurídico separado y distinto de sus accionistas, cuenta

con legitimación activa para invocar la regla de exclusión. Esto es así ya que surge de la propia Regla 234 de Procedimiento Criminal, que regula la moción de supresión de evidencia, que quien presenta la moción es la "persona agraviada" por un registro o allanamiento ilegal. Pueblo v. Ramos Santos, supra.

En ese sentido, el caso ante nuestra consideración es claramente distinguible de lo resuelto en RDT Const. Corp. v. Contralor I, supra. Aquí la corporación no es sujeto de investigación. No existe acusación alguna contra las corporaciones intervenidas, sino que únicamente figuran como acusados el señor Costas Elena y la señora Russell McMillan. Solamente contra ellos pesan las acusaciones. La información bancaria obtenida en este caso es propiedad de las corporaciones, personas jurídicas independientes, quienes son las agraviadas en su limitada expectativa de intimidad sobre esas cuentas y quienes son las únicas que pueden invocar derechos sobre la información que ellas le suministran a los bancos. Por tanto, como los peticionarios no albergan una expectativa de intimidad propia sobre la información bancaria, se encuentran impedidos de invocar la supresión de los documentos bancarios.

Los acusados-peticionarios señalan que ostentan la legitimación activa para solicitar la supresión de la evidencia obtenida de las corporaciones porque ellos y las corporaciones son la "misma persona", ya que operaban

como una "sola unidad". Petición de *certiorari*, pág. 11.[6]

Bajo dichos argumentos aseveran que pueden invocar para

su propio beneficio los derechos constitucionales que le

asisten a las corporaciones intervenidas. Estos

argumentos tampoco nos convencen. Las corporaciones son

entidades jurídicas separadas y distintas de la de sus

accionistas. Por tanto, de ocurrir un registro en una

cuenta bancaria de una corporación, es el ente

corporativo y no sus accionistas quienes tienen la

legitimación activa para solicitar la supresión de la

evidencia. Véase, RDT Const. Corp. v. Contralor I, supra.

Es decir, la legitimación activa no es de toda persona

acusada que pueda beneficiarse con la supresión; sino de

la persona que sufrió la intrusión irrazonable con su

_____

[6] Aducen los peticionarios que como sus corporaciones son íntimas y ellos son sus únicos accionistas, poseen legitimación activa para solicitar la supresión de la evidencia obtenida de las cuentas bancarias de las corporaciones. Sin embargo, el Tribunal de Primera Instancia señaló que la supuesta naturaleza íntima de las corporaciones no se planteó oportunamente ni se presentó evidencia al respecto. Además, señaló el foro primario que los certificados de incorporación no cumplían con lo exigido por el Art. 14.04 de la Ley de Corporaciones de 1995. De igual forma, el foro intermedio concluyó que, luego de evaluar los tres certificados de incorporación sometidos por los peticionarios, no se desprende que éstos cumplen con los requisitos de la Ley de Corporaciones de 1995 referente a las corporaciones íntimas. Véase, Resolución del Tribunal de Apelaciones de 29 de octubre de 2007, pág. 13. Como correctamente señaló el Tribunal de Apelaciones, aun cuando los peticionarios hubiesen probado que las corporaciones eran íntimas o familiares, la doctrina es clara en establecer que la corporación íntima comparte con la corporación regular la personalidad jurídica propia. Al ser esto así, es la corporación la que ostenta la legitimación para poder solicitar la supresión de la evidencia que se obtenga de sus cuentas corporativas.

intimidad. La norma jurisprudencial se inclina a reconocer legitimación activa en circunstancias en las que el registro se lleva a cabo en un lugar en relación con el cual el accionista u oficial acusado abriga una expectativa razonable de intimidad. Mancusi v. DeForte, supra. Para una aplicación de esta norma, véase, e.g., United States v. Carrol, supra.

El que los peticionarios realizaran los depósitos en las cuentas corporativas no creó una expectativa razonable de intimidad de ellos sobre esas cuentas. Al depositar fondos allí lo hacían como oficiales de las corporaciones, para beneficio de éstas. Por eso, eran las corporaciones y no los peticionarios, los verdaderos depositantes. Resolver lo contrario le daría también una expectativa de intimidad a cualquier persona -incluyendo un empleado o mensajero- que realizara físicamente los depósitos en una cuenta de banco corporativa.

Tampoco hace diferencia que el Ministerio Público acusara a los accionistas y oficiales corporativos pero no a las corporaciones. Son los hechos los que llevan al fiscal a ejercer su discreción y presentar las acusaciones que entienda que corresponden. "[L]a Rama Ejecutiva tiene amplia discreción al momento de decidir a quién encausa o contra quién insta una acción criminal". Pueblo v. Martínez Acosta, 174 D.P.R. 275, 281 (2008). Véase Wayte v. United States, 470 U.S. 598 (1985). "Los tribunales no deben intervenir en la discreción del

Ministerio Público de acusar o no a una persona por determinado delito, salvo abuso de discreción por procesamiento selectivo basado en consideraciones constitucionalmente inaceptables, lo que en este caso no ha sido demostrado". Pueblo v. APS Healthcare of P.R., 2009 T.S.P.R. 11, 2009 J.T.S. 14, pág. 448, 175 D.P.R. ___, ___ (2009). Véase, además, Pueblo v. Dávila Delgado, 143 D.P.R. 157, 170 (1997).

Lo que estamos resolviendo es que la legitimación para presentar una moción de supresión al amparo de la Regla 234 no se fundamenta en la titularidad de las cuentas bancarias que el fiscal se propone presentar en evidencia sino en la expectativa razonable de intimidad de los acusados respecto a esas cuentas. Al depositar sus fondos en las cuentas de otros una persona no puede reclamar una expectativa razonable de intimidad porque no tiene el control de las cuentas. La existencia de una corporación no altera ese análisis sino que lo refuerza ante la naturaleza altamente regulada del ente corporativo.

La disidencia pretende reconocerle legitimación activa a los peticionarios porque éstos "eran las únicas personas naturales que tenían acceso a dichas cuentas corporativas, pues eran los únicos oficiales de la corporación". Contrario a lo aseverado en la opinión disidente, la consecuencia de establecer una norma como esa es descorrer el velo corporativo. De otra forma,

estaríamos borrando la demarcación clara que existe en nuestro ordenamiento jurídico entre una corporación y sus oficiales.

Por todo lo anterior, concluimos que los acusados-peticionarios carecen del criterio rector de expectativa razonable de intimidad que les daría la legitimación activa para impugnar el registro de las cuentas bancarias corporativas. Por ello, éstos no pueden solicitar la supresión de la evidencia obtenida de estas cuentas.

VII

"Es política pública del Departamento de Hacienda del Estado Libre Asociado de Puerto Rico promover el cumplimiento de las leyes fiscales, y así, fomentar un sistema contributivo en el cual la carga contributiva esté distribuida de una manera justa." Art. III, Reglamento para la administración y el uso del programa de equidad contributiva del Departamento de Hacienda, 7022, 16 de agosto de 2005, pág. 1. Por ello, el "Secretario del Departamento de Hacienda tiene la obligación de administrar el sistema de rentas internas del Gobierno y cobrar las contribuciones impuestas por ley." Reglamento para la administración y el uso del programa de equidad contributiva del Departamento de Hacienda, supra, pág. 1. Para cumplir con tan importante encomienda, se "hace imprescindible que el Secretario posea amplios poderes de investigación." Reglamento para

la administración y el uso del programa de equidad
contributiva del Departamento de Hacienda, supra, pág. 1.

La Ley Núm. 120 de 31 de octubre de 1994, conocida
como el Código de Rentas Internas de Puerto Rico de 1994,
dispone en el inciso (a) de la Sección 6121, 13 L.P.R.A.
sec. 8121(a), las facultades del Secretario de Hacienda.
Específicamente, dispone:

> § 8121. Examen de libros y de testigos

> (a) Para determinar responsabilidad del
> contribuyente.-Con el fin de determinar la
> corrección de cualquier planilla o declaración,
> o con el fin de preparar una planilla cuando
> ninguna se hubiere rendido, el Secretario
> podrá, por conducto de cualquier funcionario o
> empleado del Departamento de Hacienda, examinar
> cualesquiera libros, papeles, constancias o
> memorandos pertinentes a las materias que deben
> incluirse en la planilla o declaración, y podrá
> requerir la comparecencia de la persona que
> rinde la planilla o declaración o la de
> cualquier oficial o empleado de dicha persona,
> o la comparecencia de cualquier otra persona
> que tenga conocimiento tocante al asunto de que
> se trate, y tomarles declaración con respecto a
> las materias que por ley deban incluirse en
> dicha planilla o declaración, con facultad para
> tomar juramentos a dicha persona o personas.

En el Código de Rentas Internas no existe definición
sobre lo que será, para propósitos de la ley, un
funcionario o empleado público. Ante tal ausencia,
señalamos a modo ilustrativo que el Art. 1.2(a) de la Ley
de Ética Gubernamental, 3 L.P.R.A. sec. 1802(a),
considera dentro de la categoría de "funcionario público"
a "aquellas personas que ocupan cargos o empleos en el
Gobierno del Estado Libre Asociado de Puerto Rico que
están investidos de parte de la soberanía del Estado, por

lo que intervienen en la formulación e implantación de la política pública". Asimismo, esta ley define los "empleado[s] público[s]" como "aquellas personas que ocupan cargos o empleos en el Gobierno del Estado Libre Asociado de Puerto Rico que no están investidos de parte de la soberanía del Estado y comprende los empleados públicos regulares e irregulares, los que prestan servicios por contrato que equivalen a un puesto o cargo regular, los de nombramiento transitorio y los que se encuentran en periodo probatorio". Art. 1.2(b), 3 L.P.R.A. sec. 1802(b).

De igual modo, la Ley de Protección de Empleados y Funcionarios, Querellantes o Testigos define los "funcionario[s] público[s]" como " aquellas personas que ocupan cargos o empleos en el Gobierno de Puerto Rico que están investidos de parte de la soberanía del Estado" y a los "empleado[s] público[s]" como "aquellas personas que ocupan cargos o empleos en el Gobierno de Puerto Rico que no están investidos de parte de la soberanía del Estado y comprende los empleados públicos regulares e irregulares, los que prestan servicios por contrato que equivalen a un puesto o cargo regular, los de nombramiento transitorio y los que se encuentran en periodo probatorio". Art. 4(a) y (b) de la Ley Núm. 426 de 7 de noviembre de 2000, 1 L.P.R.A. sec. 602(a) y (b).

En Srio de Hacienda v. Tribl. Superior, 81 D.P.R. 666 (1960), tuvimos la oportunidad de analizar la

entonces vigente Sección 413(a) de la Ley de Contribuciones sobre Ingresos de 1954, que era prácticamente igual a la actual Sección 6121 del Código de Rentas Internas de 1994, supra. Determinamos entonces que

> [l]a facultad de investigación concedida por la sec. 413 al Secretario de Hacienda es de naturaleza inquisitiva. Tal facultad es indispensable para que dicho funcionario pueda cumplir su obligación de cobrar las contribuciones sobre ingresos impuestas por ley. Dicha sección, dado el fin público que persigue, debe ser interpretada liberalmente.
>
> Srio de Hacienda v. Tribl. Superior, supra, pág. 672.

Por otra parte, cuando el legislador aprueba una ley persigue "tratar de corregir un mal, alterar una situación existente, completar una reglamentación vigente, fomentar algún bien específico o el bienestar general, reconocer o proteger un derecho, crear una política pública o formular un plan de gobierno." R. E. Bernier y J. A. Cuevas Segarra, Aprobación e interpretación de la leyes en Puerto Rico, 2da ed. rev., Publs. JTS, 1987, Vol. 1, págs. 245-246. Antes del año 2004 existía una "agria controversia sobre los contratos de servicios profesionales o consultivos otorgados por el Gobierno del Estado Libre Asociado de Puerto Rico." Exposición de Motivos de la Ley Núm. 237 de 31 de agosto de 2004, conocida como Ley para Establecer Parámetros Uniformes en los Procesos de Contratación de Servicios Profesionales y Consultivos para las Agencias y Entidades

Gubernamentales, 3 L.P.R.A. secs. 8611-8615. Aunque la Ley Núm. 237 no estaba vigente al momento de ocurrir estos hechos, resume la práctica tradicional de la contratación de servicios profesionales por las agencias de gobierno. Por ello, con el fin de "corregir ese mal", se promulgó esa ley para regular la práctica de la contratación de servicios profesionales y consultivos luego de las recomendaciones hechas por el Contralor para que el proceso de seleccionar los servicios de terceros fuese justo con el contratado, con la entidad gubernamental contratante y sobre todo, con el pueblo. Véase, Exposición de Motivos de la Ley Núm. 237. Así se consolidaron "en un solo estatuto los requisitos de contratación de servicios profesionales o consultivos que otorgan las entidades gubernamentales por concepto de servicios profesionales o consultivos a individuos y entidades privadas." Id.

Así pues, la contratación de servicios profesionales o consultivos, según el Artículo 2 de la mencionada ley, id. sec. 8612,

> se perfeccionará excepcionalmente y se utilizará únicamente cuando la entidad gubernamental no cuente o no pueda utilizar los recursos internos a ser contratados, o cuando el *expertise* destreza o experiencia del contratista sea necesario para la consecución de los fines para lo cual es contratado. En todo proceso de contratación que sea otorgado entre una entidad gubernamental y un contratista, se tomará en cuenta la necesidad real de los servicios a contratarse, la situación económica y el presupuesto de la entidad gubernamental contratante.

Los acusados-peticionarios aducen que la investigación de sus planillas de contribución sobre ingresos fue ilegal pues para ello se utilizaron los servicios de la CPA Márquez Vázquez, quien no es empleada ni funcionaria del Departamento de Hacienda. Con el beneficio del marco conceptual anteriormente señalado, debemos resolver si dentro del amplio poder de investigación que ostenta el Secretario de Hacienda, éste puede subcontratar para la investigación de planillas de contribución sobre ingresos.

VIII

Como señalamos en Srio de Hacienda v. Tribl. Superior, supra, la Sección 6121(a), supra, debe interpretarse liberalmente para reconocer la amplitud de las funciones del Secretario. Al interpretarla liberalmente, concluimos que el Secretario de Hacienda puede contratar servicios profesionales y consultivos para que lo asistan en su función inquisitiva. Asimismo, cabe señalar que la mencionada sección no prohíbe la subcontratación de terceros ajenos a la agencia para realizar las funciones de investigación. Incluso, es costumbre que las agencias, departamentos e instrumentalidades subcontraten los servicios profesionales y consultivos de entidades privadas para que los asistan en distintos asuntos. Consciente de ello, la Asamblea Legislativa aprobó la Ley Núm. 237. No podemos perder de perspectiva que el Departamento de

Hacienda tiene el ineludible deber de velar por la sana administración de las leyes fiscales y mantener un sistema tributario en el que impere una carga contributiva justa. Para cumplir con ese deber, en ocasiones es necesaria la ayuda de profesionales expertos en materias delicadas.

Los acusados-peticionarios alegan que la Ley Núm. 41 de 9 de junio de 1946, 3 L.P.R.A. sec. 231(a), autoriza al Secretario de Hacienda a delegar sus funciones únicamente a los funcionarios o empleados de su Departamento. No están en lo correcto. Dicha disposición de ley no prohíbe la contratación de servicios profesionales o consultivos para asistir al Secretario de Hacienda en sus funciones.

Por último, es norma reiterada en hermenéutica que las diversas "leyes sobre el mismo asunto o el mismo objetivo deben ser interpretadas conjuntamente, refiriéndose las unas a las otras como un todo". Bernier & Cuevas Segarra, op cit., pág. 481. La regla "*in pari materia* preconiza que la Asamblea Legislativa, al aprobar una disposición de ley, ha tomado en consideración todos los demás estatutos sobre la materia, ya sean parte de la propia ley, ya sean independientes de ella". Id. "Para interpretar correctamente una ley, debe buscarse la intención legislativa, no en una frase aislada o en una de sus secciones, sino en el contexto de todo el

estatuto, teniendo en cuenta el propósito perseguido por el legislador". Id., pág. 484.

La intención de la Asamblea Legislativa fue otorgar poderes amplios al Secretario de Hacienda para cumplir con su función inquisitiva. Una interpretación armoniosa del Código de Rentas Internas, de la Ley de Contabilidad del Gobierno y de la Ley Núm. 237 nos lleva a concluir que el Secretario de Hacienda cuenta con poderes amplios para delegar su función investigativa en empleados y funcionarios, incluidos aquellos que desempeñan su labor por medio de un contrato de servicios profesionales o consultivos.

Incluso, si utilizamos a modo de ejemplo las definiciones ya citadas de "empleados" y "funcionarios" que aparecen en la Ley de Ética Gubernamental y en la Ley de Protección de Empleados y Funcionarios, Querellantes o Testigos podemos colegir que la CPA Márquez Vázquez está facultada para realizar estas funciones, ya que es una profesional que "presta servicios por contrato" al Departamento de Hacienda.

Por todo ello, concluimos al igual que los foros de inferior jerarquía, que no procede la supresión del testimonio de la CPA Márquez Vázquez.

IX

Por los fundamentos antes expuestos procede que se confirme la resolución del Tribunal de Apelaciones y se

devuelva el caso al Tribunal de Primera Instancia para procedimientos ulteriores.


                              RAFAEL L. MARTÍNEZ TORRES
                                   Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico
    Recurrido

                                *Certiorari*

      v.

                            CC-2008-8

Luis P. Costas Elena y
Hazell A. Russell McMillan
    Peticionarios

Opinión Disidente emitida por la Jueza Asociada señora FIOL MATTA a la que se une el Juez Presidente señor HERNÁNDEZ DENTON

En San Juan, Puerto Rico, a 31 de marzo de 2011.

> "Contra la ilegalidad no hay que garantizar nada. Lo ilegal es ilegal…y no puede prevalecer en ningún sitio".
> **-Antonio Reyes Delgado, delegado a la Convención Constituyente**[1]

Hoy, por estar igualmente divido el Tribunal, se confirma una Sentencia del Tribunal de Apelaciones que resuelve que para solicitar la supresión de evidencia producto de un registro ilegal, una persona acusada de delito necesita legitimación activa basada en una expectativa razonable de intimidad sobre el lugar registrado, interpretando así el término de 'persona agraviada'

---

[1] 3 Diario de Sesiones, Convención Constituyente, p. 1566.

recogido en la Regla 234 de Procedimiento Criminal. Además, se confirma la determinación de que, en este caso, los co-acusados no lograron demostrar dicha legitimación pues no albergaban una expectativa razonable de intimidad sobre unas cuentas bancarias de sus corporaciones.

Disiento respetuosamente. En primer lugar, porque la doctrina de legitimación activa que se adopta, basada en el estándar de expectativa razonable de intimidad, es contraria a nuestro ordenamiento constitucional. En segundo lugar, porque la doctrina según adoptada no es acorde a la propia jurisprudencia federal de donde se importa y es insuficiente en cuanto a nuestros estándares de intimidad. En tercer lugar, porque la aplicación de esa doctrina a los hechos de este caso exige un resultado distinto, pues los co-acusados lograron establecer que albergaban una expectativa razonable de intimidad sobre las mencionadas cuentas. Finalmente, porque se valida el empleo por parte del Estado de un esquema para esquivar los controles constitucionales a su poder coercitivo generando un subterfugio intolerable que le permite beneficiarse de sus actos ilegales.

Por otra parte, concurro con que el Secretario de Hacienda cuenta con el poder estatutario para delegar en una persona que no es empleada regular de la agencia, mediante contrato, la conducción de una investigación sobre evasión contributiva.

I.

Producto de una investigación, dos Comisiones de la Asamblea Legislativa refirieron a los Departamentos de Justicia y Hacienda un informe para que investigaran posibles violaciones de ley por parte de los aquí peticionarios, Luis P. Costas Elena y Hazell A. Russell McMillan, casados entre sí, y sus corporaciones. Desde el inicio del proceso, los peticionarios fueron los blancos de la investigación.

Tras los referidos, el Departamento de Hacienda hizo requerimientos de información al Banco Bilbao Vizcaya Argentaria (BBVA), entre otras entidades, sobre los números de las cuentas bancarias de los peticionarios. Posteriormente, el Departamento presentó al Tribunal de Primera Instancia una petición *ex parte* solicitando órdenes de registro a varias cuentas bancarias, unas pertenecientes a los peticionarios en su capacidad personal y otras a las entidades corporativas de las cuales eran únicos accionistas. A pesar de ser cuentas bancarias separadas, algunas a nombre personal del señor Costas Elena y la señora Russell McMillan, y otras a nombre de las corporaciones como personas jurídicas, del expediente surge que estas cuentas interactuaban entre sí de tal manera que fondos de las corporaciones se depositaban en las cuentas personales de los co-acusados y fondos de éstos se depositaban en las cuentas corporativas. Igualmente, se utilizaban las cuentas indistintamente para efectuar pagos, por ejemplo, se usaba la cuenta corporativa para pagar

gastos personales del señor Costas Elena y la señora Russell McMillan.[7]

El foro de instancia emitió las órdenes solicitadas. De la información recopilada producto de esos registros, se presentaron varias acusaciones criminales contra los peticionarios Costas Elena y Russell McMillan, <u>pero no así contra las corporaciones como personas jurídicas</u>.[8] Tras presentarse las acusaciones, los peticionarios solicitaron que la evidencia obtenida producto de los registros previamente mencionados fuera suprimida, al amparo de la Regla 234 de Procedimiento Criminal.[9] El Tribunal de Primera Instancia declaró <u>con lugar</u> la supresión de la evidencia obtenida de los registros realizados a las

---

[7] Este asunto se atenderá con más detenimiento posteriormente al analizarse si los peticionarios contaban con una expectativa razonable de intimidad sobre las cuentas bancarias de la corporación según la normativa que adopta la Opinión de conformidad. Esta información surge de la declaración jurada de la CPA Lydia E. Márquez Vázquez, quien fue la persona contratada por el Departamento de Hacienda para dirigir la investigación contra el señor Costas Elena y la señora Russell McMillan. Como parte de esa investigación, la señora Márquez Vázquez analizó las actividades de las cuentas bancarias personales y corporativas de los peticionarios.

[8] Los cargos consistían de evasión contributiva y brindar información falsa. En particular, se presentaron acusaciones por cuatro (4) violaciones a la Sección 6050 del Código de Rentas Internas de Puerto Rico, <u>13 L.P.R.A. § 8055</u>, y por cuatro (4) violaciones al artículo 6054(b)(1) del Código de Rentas Internas de Puerto Rico, <u>13 L.P.R.A. § 8059</u>.

[9] <u>34 L.P.R.A. Ap. II R. 234</u>. Originalmente, la moción de supresión se basó en que los registros no fueron notificados a los peticionarios y no fueron autorizados por orden judicial. Tras ser informados de la existencia de una orden judicial que autorizaba los registros, los peticionarios presentaron una bajo la Regla 234.

cuentas bancarias personales de los peticionarios, por entender que la información que sirvió de base para dichos registros era insuficiente para constituir causa probable. Según surge del expediente, la solicitud *ex parte* de orden de registro contra las cuentas bancarias de los peticionarios se basó únicamente en la declaración escueta de una funcionaria del Departamento de Hacienda que no establecía hechos específicos y se limitaba a informar de la existencia de una investigación contra los peticionarios. Esta determinación del foro de instancia advino final y firme, y no ha sido cuestionada por el Estado.

Por otro lado, el foro de instancia declaró <u>sin lugar</u> la supresión de la evidencia obtenida del registro de las cuentas corporativas de los peticionarios.[10] El Tribunal de Primera Instancia razonó que los peticionarios carecían de legitimación activa para impugnar dicho registro, aún cuando el registro de sus cuentas bancarias personales era ilegal por ser producto de la misma orden judicial basada en la misma declaración insuficiente. El foro primario estimó que la <u>única</u> legitimada para solicitar la supresión

---

[10] Los peticionarios operaban varias entidades corporativas: Diógenes International Consulting, Demeter International y PR Agro-Terra International. Los peticionarios alegan que se trata de corporaciones íntimas. Según las determinaciones del foro de instancia, que no tenemos base para descartar, estas corporaciones no cumplieron con las exigencias legales para ser consideradas como corporaciones íntimas. No obstante, no hay controversia en que los únicos accionistas y oficiales de estas corporaciones eran los peticionarios, y que el quehacer diario de las corporaciones estaba íntimamente ligado a ellos.

de la evidencia era la corporación, dado que el registro se hizo contra cuentas que le pertenecían. Como la corporación no figuraba como acusada en el caso, no había quién pudiese cuestionar la validez de este registro.[11] Por tanto, el Estado se benefició de su registro ilegal al no acusar a la única persona jurídica facultada para cuestionarlo y sí a las personas naturales que eran sus oficiales y accionistas.

Los peticionarios acudieron oportunamente al Tribunal de Apelaciones. Éste sostuvo las determinaciones del Tribunal de Primera Instancia. El foro intermedio determinó que los peticionarios carecían de legitimación activa para impugnar el registro ilegal de las cuentas bancarias corporativas, pues la 'persona agraviada' por ese registro fue la propia corporación. Dado que la corporación tiene una personalidad jurídica separada e independiente de sus accionistas, oficiales y directores, y ante el hecho de que ésta no fue acusada, los peticionarios necesitaban demostrar que tenían una expectativa legítima de intimidad sobre las cuentas bancarias corporativas. El Tribunal de

---

[11] Los peticionarios también cuestionaron el requerimiento de información que hiciera el Departamento de Hacienda contra el BBVA y otros sobre los números de las respectivas cuentas bancarias. Además, impugnaron el testimonio de la CPA Lydia E. Márquez Vázquez dado que ésta, por ser contratista del Departamento de Hacienda pero no empleada de éste, no estaba autorizada a llevar a cabo la investigación que eventualmente resultaría en sus acusaciones. El primer asunto —el requerimiento del número de las cuentas bancarias- no ha sido cuestionado ante este Tribunal. En cuanto al segundo asunto, estamos de acuerdo con el razonamiento de la Opinión de conformidad.

Apelaciones entendió que los peticionarios no tenían dicha expectativa.

Inconformes aun, los peticionarios presentaron un recurso de *certiorari* ante este Tribunal señalando la comisión de tres errores. En primer lugar, alegan que las corporaciones cuyas cuentas bancarias fueron registradas son, verdaderamente, un *alter ego* de los peticionarios. En segundo lugar, objetan el testimonio de la CPA Márquez Vázquez pues entienden que, como contratista privada, carecía de autoridad en ley para dirigir la investigación en su contra. En tercer lugar, alegan que se debe suprimir toda evidencia producto del registro ilegal contra las cuentas bancarias de las corporaciones. Los primeros dos errores no se cometieron. El tercero sí se cometió.

II.

A.

La Constitución de los Estados Unidos y la Constitución de Puerto Rico protegen al pueblo contra registros, allanamientos e incautaciones irrazonables por parte del Estado. En la Constitución federal, esta protección está recogida en la Cuarta Enmienda que dispone como sigue:

> No se violará el derecho del pueblo a la seguridad de sus personas, hogares, documentos y pertenencias contra registros, detenciones e incautaciones irrazonables, y no se expedirá ningún mandamiento sino con causa probable apoyada en juramento o afirmación, que describa particularmente el lugar que ha

de ser registrado y las personas o cosas
que han de ser detenidas o incautadas.[12]

Por su parte, nuestra Constitución, en la sección 10 del Artículo II, ordena así:

> No se violará el derecho del pueblo a la protección de sus personas, casas, papeles y efectos contra registros, incautaciones y allanamientos irrazonables. No se interceptará la comunicación telefónica. Sólo se expedirán mandamientos autorizando registros, allanamientos o arrestos por autoridad judicial, y ello únicamente cuando exista causa probable apoyada en juramento o afirmación, describiendo particularmente el lugar a registrarse, y las personas a detenerse o las cosas a ocuparte. <u>Evidencia obtenida en violación de esta sección será inadmisible en los tribunales</u>.[13]

En cuanto a la protección generada por ambos textos constitucionales, hemos determinado que en todo caso que se impugne un registro, allanamiento o incautación por alegadamente ser ilegal o irrazonable, resolveremos al amparo de nuestra propia Constitución, ya que las protecciones otorgadas por la Constitución federal están incluidas en nuestra Ley Suprema.[14] Esto, pues la Cuarta Enmienda "describe el ámbito mínimo de la garantía que reconoce. Los estados no pueden achicar esas fronteras,

---

[12] Const. EEUU, Enmienda Cuarta. Traducción hecha por el profesor Ernesto L. Chiesa Aponte en <u>Derecho Procesal Penal: Etapa Investigativa</u>, J.T.S. (2006), p. 98.

[13] Const. PR, sec. 10, Art. II. (Énfasis suplido).

[14] <u>Pueblo v. Rivera Colón</u>, 128 D.P.R. 672, 680 (1991), <u>E.L.A. v. Coca Cola Bott. Co.</u>, 115 D.P.R. 197, 205 (1984).

pero pueden expandirlas".[15] En efecto, tanto nuestra Constitución como la jurisprudencia interpretativa han expandido esa protección contra la arbitrariedad gubernamental.[16]

La forma de la sección 10 del Artículo II de la Constitución de Puerto Rico es "análoga a la Enmienda Cuarta, pero el contenido es distinto. Ambas disposiciones respondieron a circunstancias diferentes y es natural que su interpretación se atenga, dentro del marco de nuestra relación con Estados Unidos, a las realidades cambiantes de una y otra sociedad".[17] La siguiente descripción de la interacción entre el texto de estas dos disposiciones constitucionales hecha por el profesor Chiesa Aponte es iluminadora:

> Los párrafos primero y tercero [de la sección 10 del Artículo II de la Constitución de Puerto Rico] equivalen a la Enmienda Cuarta. El segundo párrafo no tiene equivalencia en la Constitución de los Estados Unidos […] El cuarto y último párrafo de la sección 10 establece expresamente la famosa regla de exclusión de evidencia obtenida en violación a la protección constitucional, lo que también es de 'factura más ancha', pues la regla de exclusión es de creación jurisprudencial en la jurisdicción federal.[18]

---

[15] Pueblo v. Dolce, 105 D.P.R. 422, 426-427 (1976); *véase además* Chiesa Aponte, Derecho Procesal Penal, *Op.Cit.*, p. 98.

[16] Pueblo v. Rivera Colón, *supra*, p. 680; Pueblo v. Malavé González, 120 D.P.R. 470, 475 (1988).

[17] Pueblo v. Dolce, *supra*, p. 429. (Énfasis suplido).

[18] Chiesa Aponte, Derecho Procesal Penal, *Op.Cit.*, p. 99.

Puede apreciarse de lo anterior que nuestro texto constitucional no tan solo ofrece mayor protección contra registros y allanamientos irrazonables, sino que _expresamente_ ordena cuál será el destino de evidencia obtenida en violación de dicha protección: la inadmisibilidad en los tribunales de Puerto Rico. Sin embargo, la diferencia entre la regla de exclusión en la jurisdicción federal y en la nuestra no estriba únicamente en que la primera es de creación jurisprudencial mientras que la segunda está plasmada expresamente en nuestro texto constitucional.[19] En nuestro ordenamiento, la regla de exclusión es más abarcadora.

Como nos señala la profesora Resumil, la regla jurisprudencial federal "_no_ va dirigida contra los errores cometidos por los magistrados al expedir la orden sino _exclusivamente_ al uso arbitrario de la discreción policial".[20] Por tanto, se limita a ser una "disuasión profiláctica" contra violaciones hechas por agentes del orden público y no constituye un "derecho constitucional personal".[21] Como veremos, ese no es el caso de Puerto Rico, en donde la elaboración estatutaria de la regla constitucional de exclusión, por vía de la Regla 234 de Procedimiento Criminal, incluye supresiones de evidencia cuando los tribunales, en efecto, emiten órdenes contrarias

---

[19] _Íd._, p. 111.

[20] Resumil, Práctica Jurídica de Puerto Rico, Derecho Procesal Penal, Tomo I (1990), p. 364. (Énfasis suplido).

[21] _Íd._

a derecho. Es decir, nuestra regla de exclusión, a diferencia de la federal, no se limita únicamente a suprimir evidencia producto del uso arbitrario de la discreción policial.[22]

B.

La interacción entre la Cuarta Enmienda y la sección 10 de nuestro Artículo II ha sido ampliamente discutida por este Tribunal. Incluso, en varias ocasiones, hemos sido críticos del desarrollo inconsistente de la jurisprudencia interpretativa del Tribunal Supremo federal sobre los alcances de la Cuarta Enmienda. En Pueblo v. Dolce señalamos que "[l]a garantía contra los registros y allanamientos irrazonables ha atravesado en el curso de su accidentada historia diversos períodos de contracción y ampliación. Como los ríos, se ensancha y se estrecha, se seca y se desborda y a veces cambia de rumbo […] Lo curioso es la fidelidad con que nuestra doctrina usualmente ha calcado en diversas fases las vueltas y revueltas de estas aguas en el derecho federal norteamericano".[23] Precisamente

---

[22] "La protección que emana del antes citado precepto constitucional [sección 10, Artículo II] consigna tres propósitos fundamentales, a saber: disuadir y desalentar a los funcionarios del orden público de incurrir en conducta violatoria de la protección constitucional; la integridad judicial al evitar la complicidad de los tribunales con respecto a actos de desobediencia a la Constitución e impedir la admisión de evidencia ilegalmente obtenida, y no permitir que el Gobierno se beneficie de sus actos ilegales". Pueblo v. Valenzuela, 158 D.P.R. 526, 539 (2003). (Énfasis suplido).

[23] Pueblo v. Dolce, supra, p. 426.

por esas 'vueltas y revueltas', muchas jurisdicciones estatales han optado por desistir de imitar la jurisprudencia federal.[24] Puerto Rico no ha sido la excepción, particularmente en cuanto a la regla de exclusión sobre la cual, como expone la profesora Resumil, este Tribunal se ha "negado consistentemente a seguir la jurisprudencia federal como única fuente de interpretación".[25]

Por su parte, la Regla 234 de Procedimiento Criminal atiende las mociones de supresión de evidencia producto de registros ilegales. Se trata de la tramitación estatutaria del mandato constitucional recogido en la sección 10 del Artículo II. En lo pertinente, la Regla dispone que:

> La persona agraviada por un allanamiento o registro ilegal podrá solicitar del tribunal al cual se refiere la Regla 233 la supresión de cualquier evidencia obtenida en virtud de tal allanamiento o registro, o la devolución de la propiedad, por cualquiera de los siguientes fundamentos:
> (a) Que la propiedad fue ilegalmente ocupada sin orden de allanamiento.
> (b) Que la orden de allanamiento o registro es insuficiente de su propia faz.
> (c) Que la propiedad ocupada o la persona o sitio registrado no corresponde a la descripción hecha en la orden de allanamiento o registro.

---

[24] *Íd.* En dicho caso, por voz del Juez Presidente Trías Monge, dijimos lo siguiente: "En United States v. Robinson, 414 U.S. 218 (1973) y Gustafson v. Florida, 414 U.S. 260 (1973), por ejemplo […], el Tribunal Supremo de los Estados Unidos redujo considerablemente la protección del ciudadano en el caso de registros de la persona incidental a un arresto. La reacción de varios estados ha sido negativa, rehusando adoptar estos fallos en la interpretación de sus propias constituciones". *Íd.*, p. 427.

[25] Resumil, Práctica Jurídica de Puerto Rico, *Op.Cit.*, p. 305.

(d)  Que no había causa probable para creer en la existencia de los fundamentos en que se basó la orden de allanamiento o registro.

(e)  Que la orden de allanamiento fue librada o cumplimentada ilegalmente.

(f)  Que es insuficiente cualquier declaración jurada que sirvió de base a la expedición de la orden de allanamiento porque lo afirmado bajo juramento en la declaración es falso, total o parcialmente.[26]

Esta Regla se refiere a evidencia obtenida como resultado de un allanamiento o registro ilegal, y es el mecanismo procesal para reclamar el derecho a la exclusión que la Constitución garantiza cuando la evidencia cuestionada ha sido obtenida en violación a la protección contra incautaciones, registros y allanamientos irrazonables e ilegales.[27]

Como adelantáramos, esta Regla no se limita únicamente a escenarios en donde ha habido conducta abusiva o arbitraria por parte de agentes del orden público, elemento

---

[26] Énfasis suplido. El resto de la Regla dispone así:

En la moción de supresión de evidencia se deberán exponer los hechos precisos o las razones específicas que sostengan el fundamento o fundamentos en que se basa la misma. El tribunal oirá prueba sobre cualquier cuestión de hecho necesaria para la resolución de la solicitud. De declararse con lugar la moción, la propiedad será devuelta, si no hubiere fundamento legal que lo impidiere, y no será admisible en evidencia en ningún juicio o vista. La moción se notificará al fiscal y se presentará cinco (5) días antes del juicio a menos que se demostrare la existencia de justa causa para no haberla presentado dentro de dicho término o que al acusado no le constaron los fundamentos para la supresión, o que la ilegalidad de la obtención de la evidencia surgiere de la prueba del fiscal.

[27] Resumil, Práctica Jurídica de Puerto Rico, Op.Cit., p. 314.

principal tras la regla de exclusión federal. También atiende circunstancias en las que un tribunal incumple con las exigencias constitucionales mínimas, como exigir la demostración de causa probable o precisar con suficiente detalle la orden emitida.

Ahora bien, la Regla 234 establece como elemento necesario para invocar sus efectos que quien presente una moción a su amparo sea una "persona agraviada" por el registro.[28] Esto, a pesar de que el mandato constitucional no incluye dicha exigencia, sino que menciona al pueblo como el receptor de la protección y ordena, de manera absoluta, la exclusión de la evidencia obtenida ilegalmente.[29] Sin embargo, nada en la Regla 234 nos requiere concluir que su protección se limite a una única persona agraviada; es decir, no hay legitimación activa exclusiva.

Según la Sentencia emitida hoy, quién único puede presentar mociones bajo la Regla 234 es la persona que posea una expectativa legítima de intimidad sobre el lugar registrado. De esa forma, se traslada el requisito de expectativa legítima de intimidad, que se utiliza para determinar cuándo aplica la protección constitucional

---

[28] El profesor Chiesa Aponte hace referencia a la "persona que ha sufrido la violación constitucional". Chiesa Aponte, Derecho Procesal Penal, *Op.Cit.*, p. 114.

[29] Toll y Sucn. Rivera Rojas v. Adorno Medina, 130 D.P.R. 352, 369 (1992, Opinión Disidente del Juez Asociado Rebollo López). "El mandato en la citada Sec. 10 de nuestra Carta de Derechos no puede ser más claro: decretado, por un tribunal competente, que una evidencia ha sido obtenida en violación de sus disposiciones, dicha evidencia es inadmisible en nuestro país". (Énfasis en original).

contra registros y allanamientos irrazonables, al concepto de legitimación activa para presentar una moción al amparo de la Regla 234. Como veremos, esa conclusión no está acorde a nuestro texto e historia constitucional, <u>pues es posible que una persona no necesariamente posea una expectativa razonable de intimidad sobre un determinado lugar, y aun así la evidencia se haya obtenido ilegalmente, lo que según nuestra Constitución supone su inadmisibilidad en los tribunales de Puerto Rico</u>. Existe una marcada diferencia entre la expectativa razonable de intimidad en cuanto a la activación de la protección constitucional contra registros irrazonables y la legitimación activa requerida para retar una evidencia ilegalmente obtenida.

En la jurisdicción federal, donde no hay una regla de exclusión de carácter constitucional, se requiere demostrar, como requisito inicial, que la persona tiene una "expectativa legítima y razonable de intimidad" sobre el lugar o cosa objeto de la intervención impugnada.[30] En este caso, lo decisivo es que "sólo puede solicitar la supresión de evidencia –invocar la regla de exclusión– la persona que ha sufrido la violación constitucional, lo que depende, a su vez, del criterio rector de expectativa razonable de intimidad".[31] La razón para esta interpretación limitada de la legitimación activa la encontramos, precisamente, en la naturaleza jurisprudencial del derecho federal y su

---

[30] Resumil, <u>Práctica Jurídica de Puerto Rico</u>, *Op.Cit.*, p. 315.

[31] Chiesa Aponte, <u>Derecho Procesal Penal</u>, *Op.Cit.*, p. 117.

objetivo limitado de ser disuasivo contra el abuso de los agentes del orden público. Por eso la normativa federal ha negado legitimación para reclamar la supresión de evidencia ilegalmente obtenida a quien no pueda demostrar una expectativa legítima de intimidad. Como adelantáramos, nuestra Constitución exige algo distinto.

En Pueblo v. Rovira Ramos,[32] nos enfrentamos directamente al asunto de la legitimación requerida para solicitar la supresión de evidencia ilegal.[33] En aquel entonces, este Tribunal resolvió de forma unánime la controversia, pero se dividió en partes iguales en cuanto a los fundamentos y se emitieron dos opiniones concurrentes. La Opinión Concurrente del Juez Asociado Rebollo López -a la que se unieron la Jueza Asociada Naveira de Rodón y el Juez Asociado Hernández Denton- es la posición que más se asemeja a nuestra realidad constitucional.[34] Nos dice la Opinión Concurrente:

---

[32] 116 D.P.R. 945 (1986).

[33] Ya antes este Tribunal había atendido el asunto de legitimación activa o *standing* para presentar una moción de supresión de evidencia. En Pueblo v. Roldán, 42 D.P.R. 956 (1931), Pueblo v. Acevedo, 59 D.P.R. 114 (1941) y Pueblo v. Monzón, 72 D.P.R. 72 (1951), habíamos rechazado el derecho automático a legitimación activa. No obstante, como puede observarse de las fechas de estos casos, se trata de expresiones vertidas antes de aprobarse la Constitución de Puerto Rico en 1952. Es decir, fueron revocadas por la Convención Constituyente al aprobar la última oración de la sección 10 del Artículo II. En Pueblo v. Vargas Delgado, 105 D.P.R. 335, 339 (1976) hicimos mención de los conceptos de "capacidad jurídica e interés legítimo" pero no los discutimos.

[34] La otra Opinión Concurrente fue emitida por el Juez Asociado Irizarry Yunqué, a quien se unieron los Jueces Asociados Negrón García y Ortiz. En ésta, entre otros

(continúa...)

Dicha conclusión [de que el apelante no tenía capacidad (standing) para solicitar la supresión] está predicada en, y es consecuencia de, la norma establecida a esos efectos por el Tribunal Supremo de los Estados Unidos […] No debemos perder de vista, sin embargo, que en la jurisdicción federal se ha resuelto que la llamada 'regla de exclusión' no goza de por sí misma de rango constitucional, sino que es meramente una medida profiláctica de los derechos bajo la citada Cuarta Enmienda. Por ende, en esa jurisdicción la misma está sujeta a modificación o abolición. […] En Puerto Rico, por el contrario, nuestra Constitución expresamente dispone, en lo pertinente, que la evidencia obtenida en violación de la citada Sec. 10 del Art. II <u>será inadmisible</u> en los tribunales.[35] Esta diferencia en el 'rango jurídico' de la regla de exclusión existente entre la jurisdicción federal y la nuestra hace, a nuestro entender, inaplicable la jurisprudencia federal que niega los efectos de la referida regla de exclusión en casos donde el acusado no puede alegar y probar una 'expectativa de privacidad' en relación con el lugar registrado o allanado.[36]

[…]

En lo que respecta a la 'capacidad' (standing) de un imputado de delito para solicitar la supresión del material delictivo en relación con el cual se le procesa, somos del criterio que bajo nuestro ordenamiento jurídico si un ciudadano es acusado de la supuesta comisión de un delito público y la

---

asuntos, se acogió el razonamiento de <u>Rawlings v. Kentucky</u>, 448 U.S. 98 (1980) y <u>Rakas v. Illinois</u>, 439 U.S. 128 (1978) sobre la necesidad de que la persona imputada tenga una expectativa legítima de intimidad sobre el lugar registrado "para determinar que un agente ha llevado a cabo un registro ilegal". <u>Pueblo v. Rovira Ramos</u>, *supra*, p. 952. Por entender que el acusado no tenía una expectativa legítima de intimidad en una armería donde llevaba su arma de fuego a arreglar, la Opinión Concurrente manifestó que no hubo registro ilegal. Es notable que el uso de la figura de la expectativa legítima de intimidad se utilizó más para determinar si existía una protección contra registros y allanamientos irrazonables que desde la óptica de si existía legitimación activa para impugnar el registro.

[35] Énfasis en original.

[36] <u>Pueblo v. Rovira Ramos</u>, *supra*, pp. 955-956.

evidencia que se pretende utilizar para probar su culpabilidad fue el producto de un registro, a esa persona no se le debe negar la 'capacidad' para cuestionar la legalidad del mismo. En otras palabras, si el Estado pretende relacionar a un acusado con determinado material delictivo y así privarlo de su libertad con motivo de ello, dicho ciudadano debe tener el <u>derecho</u> automático de cuestionar la legalidad de la forma o manera en que el Estado advino en posesión del referido material.[37]

El mandato constitucional es meridianamente claro: para <u>impugnar</u> un registro ilegal no hay otro criterio de legitimación que el ser una persona acusada de delito público contra quién se pretenda utilizar evidencia obtenida como resultado de ese registro. Si la impugnación no prospera porque no hay protección constitucional debido a que el acusado no tiene una expectativa legítima de intimidad sobre el lugar registrado <u>o porque no hay otra causa de ilegalidad en el registro</u>, la evidencia no será suprimida. Pero ello es impertinente al asunto de legitimación, pues no se le puede negar a un ciudadano acusado de delito la oportunidad de impugnar un registro ilegal.

Esto es consistente con el diseño empleado por la Convención Constituyente al aprobar la sección 10 del Artículo II. En su versión actual, dicha sección protege al pueblo contra registros, allanamientos e incautaciones <u>irrazonables</u>. Durante los trabajos de la Convención, se presentó una enmienda para añadir la palabra <u>ilegal</u>. Los delegados que argumentaron en contra hicieron alusión a que

---

[37] <i>Íd.</i>, pp. 956-957. (Énfasis en original).

era innecesario: "contra la ilegalidad no hay que garantizar nada. <u>Lo ilegal es ilegal</u> […] y <u>no puede prevalecer en ningún sitio</u>. Yo creo que esa calificación es innecesaria".[38] Posteriormente, la Convención recibió el Informe de la Comisión de Carta de Derechos que disponía que "[p]ara dar garantía adicional y efectiva a estos derechos se declara inadmisible en los tribunales toda evidencia que haya sido obtenida por su violación".[39]

Nótese que el mandato constitucional no condiciona la regla de exclusión a elemento alguno. Es un mandato contundente. De igual forma, es revelador el debate entre los delegados constituyentes que consideraron que era innecesario añadir una prohibición contra registros ilegales porque ello sería redundante. No obstante, el resultado al que se llega hoy permite que se utilice evidencia producto de un registro que es, a todas luces, más que irrazonable, ilegal. De esa forma, la última oración de la sección 10 del Artículo II deja de tener el efecto que pretendieron darle sus creadores. Hasta hoy, la sección 10 del Artículo II de la Constitución de Puerto Rico ofrecía más; hoy ofrece menos.[40]

---

[38] Expresiones del delegado Antonio Reyes Delgado, 3 Diario de Sesiones, Convención Constituyente, p. 1566. Tras su intervención, otros delegados se hicieron eco de sus palabras y se derrotó la enmienda.

[39] Informe de la Comisión de Carta de Derechos, 4 Diario de Sesiones, Convención Constituyente, p. 2568.

[40] En su Opinión Concurrente en nuestra Sentencia en <u>Pueblo v. Martínez Martí</u>, 115 D.P.R. 832 (1984), el Juez Asociado Rebollo López nos hace la siguiente advertencia: "Lo que si [sic] posiblemente impresiona e impacta de la decisión

(continúa...)

---

emitida en el caso de Illinois v. Gates, *ante*, es que dicha decisión es un eslabón más en la reciente tendencia o 'viraje' de parte del Tribunal Supremo de Estados Unidos hacia lo que podríamos catalogar de una interpretación más 'restrictiva' de los 'derechos' de los ciudadanos de ese país 'garantizados' bajo la Cuarta Enmienda". *Íd.*, p. 857.

Nuestras expresiones sobre los límites de la regla de exclusión constitucional demuestran lo cautelosos que hemos sido en cuanto a no achicar el grado de protección que dicha regla genera. En E.L.A. v. Coca Cola Bott. Co., *supra*, resolvimos que la sección 10, Artículo II cobija a investigaciones administrativas y, además, que protege a establecimientos comerciales. En Toll y Sucn. Rivera Rojas v. Adorno Medina, *supra*, un Tribunal fuertemente dividido resolvió que la sección 10, Artículo II no conllevaba la exclusión de evidencia ilegalmente obtenida en casos civiles si el gobierno no era parte en dicho pleito y no se beneficia de alguna manera con la admisión de la evidencia ilegalmente obtenida. No obstante la estrechez de esta excepción a la regla de exclusión constitucional, tres integrantes de esta Curia disintieron por entender que dicha regla es de carácter absoluto. En su Opinión Disidente, nuevamente el Juez Asociado Rebollo López nos hace una importante advertencia: "[E]l Tribunal en el presente caso incurre en el error de resolver este tipo de situación a base de la doctrina prevaleciente en la esfera federal, la cual es una no sólo mucho más restrictiva y conservadora que la norma imperante en nuestra jurisdicción, sino que, naturalmente, una basada en las disposiciones específicas de la citada Cuarta Enmienda de la Constitución federal". *Íd.*, p. 367. Concluye el Juez Rebollo López: "En el presente caso, llana y sencillamente, nos enfrentamos a un lenguaje expreso y específico de nuestra Constitución, el cual venimos en la obligación a acatar y poner en vigor en nuestra jurisdicción". *Íd.*, p. 368.

C.

Nuestra Constitución no es una traducción al español de la Constitución federal. Tiene vida propia, reconoce más derechos y ofrece mayores protecciones. Es desde esa óptica que debemos analizar la controversia ante nuestra consideración. Por tanto, me parece incorrecto recurrir únicamente a la doctrina federal para interpretar, no tan solo el mínimo, sino el máximo de nuestra propia protección constitucional.[41] Este método adjudicativo fallido, no sólo contradice nuestra larga tradición de reconocer en la Constitución de Puerto Rico garantías adicionales al mínimo requerido por la Constitución federal, sino que ignora y minimiza la discusión generada en nuestro propio espacio interpretativo sobre el asunto en controversia.[42] En este sentido, llama la atención el poco interés que muestra la Opinión de conformidad en el debate iniciado por las opiniones concurrentes en Pueblo v. Rovira Ramos. Aunque la Opinión de conformidad se asemeja a la Opinión Concurrente

_____

[41] Me parece preocupante y totalmente incorrecto, además, el uso de fallos de tribunales federales de distrito para, primero, afirmar cuál es la doctrina federal prevaleciente y, segundo, para interpretar los límites de nuestra propia Constitución.

[42] *Véase* el artículo del entonces Juez Asociado del Tribunal Supremo de los Estados Unidos William J. Brennan, Jr., sobre la importancia de que se desarrolle un derecho constitucional estatal que ofrezca mayores libertades a los ciudadanos y ciudadanas. William J. Brennan, Jr., State Constitutions and the Protection of Individual Rights, 90 Harv. Law Rev. 489 (1977). Incluso, hace un llamado a que se interpreten cláusulas idénticas en las constituciones estatales y federal de manera distintas. En este caso, estamos ante una cláusula expresamente diferente a la disposición constitucional federal. No obstante, la Opinión de conformidad opta por darle una interpretación idéntica.

del Juez Asociado Irizarry Yunqué, a penas la menciona. Tampoco profundiza en su inconformidad con los planteamientos del Juez Asociado Rebollo López.[43]

III.

A pesar de mi fuerte discrepancia en cuanto al concepto de legitimación activa como requisito para presentar una moción de supresión de evidencia, entiendo que cumplo con mi función como miembro de un cuerpo colegiado al señalarle a la Opinión de conformidad que su análisis de la normativa federal que requiere una expectativa legítima de intimidad sobre el lugar registrado para cuestionar un registro es incompleto a la luz de la

---

[43] De esa forma, se empobrece, no sólo la vitalidad de nuestra Constitución y su promesa de ampliar las protecciones mínimas contenidas en la Constitución federal, sino nuestra metodología interpretativa y de adjudicación. Debo señalar que nunca hemos retomado ese debate, a pesar de varias oportunidades para hacerlo. Sobre esto, el profesor Chiesa Aponte comenta lo siguiente: "Con esta división de tres a tres en el Tribunal Supremo respecto a la exigencia de 'standing' para que un acusado pudiera presentar una moción de supresión al amparo de la Regla 234 de Procedimiento Criminal, era de esperarse una gran discusión en el próximo caso sobre este asunto. Pero no ocurrió así". Chiesa Aponte, Derecho Procesal Penal, *Op.Cit.*, p. 119. Con la presente Sentencia sigue vigente, pues, otro comentario del distinguido tratadista, en el sentido de que, en Puerto Rico, "la exigencia de legitimación activa para solicitar la supresión de evidencia obtenida mediante un registro ilegal, ha tenido un desarrollo algo curioso". *Íd.*, p. 117. Si bien es cierto, como señala la Opinión de conformidad, que en casos posteriores a Pueblo v. Rovira Ramos hemos empleado la figura de la legitimación activa basada en una expectativa razonable de intimidad para atender argumentos sobre supresión de evidencia, es igualmente cierto que lo hemos hecho sin profundizar en dicha figura y sin retomar el debate que dejamos pendiente en ese caso. Hoy, en vez de reabrir el debate, lo damos por cerrado sin mayor discusión.

propia doctrina federal. Como veremos, ésta reconoce una expectativa de intimidad a personas naturales en lugares pertenecientes a personas jurídicas, rechazando así la legitimación activa exclusiva que aparenta emplear la Opinión de conformidad y ampliando las circunstancias en donde una persona natural puede poseer una expectativa de intimidad sobre propiedad corporativa. Iniciamos nuestra discusión retomando el asunto de la protección contra registros y allanamientos irrazonables.

A.

Para gozar de la protección constitucional contra registros y allanamientos irrazonables, la persona que la reclama tiene que albergar una expectativa razonable de intimidad sobre el lugar registrado.[44] Esta exigencia es igual tanto bajo la Constitución federal como la Constitución de Puerto Rico.[45] Para determinar si se activa la protección de la Cuarta Enmienda, en la jurisdicción federal se utiliza un estándar de expectativa razonable de intimidad considerablemente parecido al que se emplea para determinar si existe legitimación activa para solicitar la

---

[44] Pueblo v. Vargas Delgado, 105 D.P.R. 335, 338 (1976); Chiesa Aponte, Derecho Procesal Penal, *Op.Cit.*, p. 108.

[45] En cuanto al uso del estándar de expectativa legítima de intimidad para evaluar la validez de un registro al amparo de la sección 10 del Artículo II de la Constitución de Puerto Rico, en Pueblo v. Rivera Colón, 128 D.P.R. 672, 686 (1991) acogimos lo resuelto en Katz v. United States, *infra*. Sin embargo, aunque acogimos el estándar de expectativa legítima de intimidad, no adoptamos la definición de expectativa legítima de intimidad de la jurisdicción federal e hicimos hincapié en que el derecho de intimidad en Puerto Rico es de mayor envergadura.

supresión de evidencia producto de un registro. Sin embargo, no son idénticos. Como nos explica LaFave en su obra Search and Seizures:

> Yet, it is important to keep in mind that the question traditionally labeled as standing (did the police intrude upon this defendant's justified expectation of privacy?) is not identical to, for example, the question of whether any Fourth Amendment search has occurred (did the police intrude upon anyone's justified expectation of privacy?), and that therefore the particular issues discussed therein are still rather discrete and deserving of separate attention, no matter what label is put on them.[46]

Como veremos, el grado de protección ofrecido por esta expectativa razonable de intimidad es considerablemente mayor bajo la Constitución de Puerto Rico que bajo la Cuarta Enmienda de la Constitución federal. Incluso, en la propia jurisdicción federal el estándar de expectativa legítima de intimidad para determinar legitimación activa es menos riguroso al exigido para determinar si se activa la protección constitucional de la Cuarta Enmienda. Por eso, aunque se entienda que la exigencia de legitimación activa para presentar una solicitud de supresión al amparo de la mencionada Regla 234 requiere demostrar una expectativa razonable de intimidad, según propone la Opinión de conformidad, la correcta aplicación de este criterio bajo normas federales exige un resultado distinto. Dado que, como hemos dicho, la Cuarta Enmienda de la Constitución federal recoge el mínimo de protección que

---

[46] Vol. 6 (2004), p. 131. (Énfasis suplido).

ofrece la sección 10 del Artículo II de la Constitución de Puerto Rico, veamos la jurisprudencia del Tribunal Supremo federal sobre este asunto.

En Katz. v. United States,[47] el Tribunal Supremo federal estableció el estándar vigente del alcance de la protección constitucional al amparo de la Cuarta Enmienda. El Tribunal Supremo de los Estados Unidos inició su análisis reconociendo que, si bien el pilar fundamental de la Cuarta Enmienda es la privacidad, la protección constitucional no se limita únicamente a ésta: "That Amendment [Fourth] protects individual privacy against certain kinds of governmental intrusion, but its protections go further, and often have nothing to do with privacy at all".[48] Esto, pues la Cuarta Enmienda protege a las personas, no a los lugares.[49] De igual forma, aunque de manera más limitada que en Puerto Rico, esa Enmienda protege contra actuaciones arbitrarias del gobierno que no necesariamente están vinculadas a violaciones a la intimidad individual.

Comenzando con Katz, el Tribunal Supremo federal adoptó un estándar que establece dos criterios para determinar en qué circunstancias opera la protección ofrecida por la Cuarta Enmienda: primero, si la persona que

---

[47] 389 U.S. 347 (1967).

[48] Katz, *supra*, p. 350.

[49] *Íd*. De esta forma se abandonó el criterio anterior que enlazaba la protección constitucional a la existencia de un "trespass". Véase Chiesa Aponte, Derecho Procesal Penal, *Op.Cit.*, pp. 102-103, y los casos allí citados.

reclama dicha protección ha exhibido, por su conducta, una expectativa de intimidad; segundo, si la sociedad está dispuesta a aceptar como razonable esa expectativa subjetiva de intimidad.[50] La jurisprudencia también ha establecido una serie de factores para ayudar en la determinación de si, en efecto, existe tal expectativa legítima de intimidad. Entre esos se encuentran:

> (1) Si la persona que reclama la protección tenía derecho a excluir a los demás del lugar registrado;
> (2) Si el lugar registrado es uno donde una persona prudente y razonable puede estar exenta de intromisión gubernamental;
> (3) Si la persona aunque no esté en posesión o control del lugar registrado tiene acceso legítimo a dicho lugar;
> (4) Si la persona ha tomado algunas medidas o precauciones para mantener su privacidad en el lugar registrado;
> (5) Si la persona razonablemente espera estar protegida en su intimidad en el lugar registrado.[51]

Ha sido éste el estándar o *test* que se ha empleado consistentemente para determinar si una persona está protegida por la Cuarta Enmienda, particularmente en casos de registros sin orden judicial. Esto es significativo, pues se trata de escenarios en donde no se requiere una orden de registro dado que no hay intimidad que proteger y, por tanto, nunca se activa la protección de la Cuarta Enmienda.

---

[50] Katz, *supra*, p. 361; Smith v. Maryland, 442 U.S. 735, 740 (1979); Rakas v. Illinois, 439 U.S. 128, 143 (1978). Véase además Chiesa Aponte, Derecho Procesal Penal, *Op.Cit.*, p. 104.

[51] Resumil, Práctica Jurídica de Puerto Rico, *Op.Cit.*, pp. 315-316.

En Smith v. Maryland, se determinó que un registro de los números discados por una persona no requería una orden judicial porque esa información no cae dentro de la expectativa razonable de intimidad que gozan los individuos. Esta decisión es consistente con la determinación en este caso en cuanto al registro de los números de las cuentas bancarias de los peticionarios. No obstante, el Tribunal Supremo federal manifestó que ello era distinto al contenido de dichas llamadas, con respecto a las cuales haría falta una orden judicial por haber una expectativa razonable de intimidad.[52]

El desarrollo jurisprudencial posterior a Katz amplió el estándar de titularidad que por muchos años determinaba si se activaban las protecciones de la Cuarta Enmienda. Este desarrollo no tuvo el efecto de eliminar el factor de titularidad, como aparenta plantear la Opinión de conformidad, sino que lo amplió para cubrir otras áreas no vinculadas directamente a este asunto.[53] Es decir, no se recurrirá a un ejercicio mecánico de quién es el dueño del lugar registrado o los objetos allanados. Más bien, se aplicará el estándar de expectativa legítima de intimidad utilizando los dos criterios mencionados: conducta

---

[52] *Íd.*, pp. 742-743.

[53] *Véase* United States v. Salvucci, 448 U.S. 83 (1980). "While property ownership is clearly a factor to be considered in determining whether an individual's Fourth Amendment rights have been violated […], property rights are neither the beginning nor the end of this Court's inquiry". *Véase además* Rawlings v. Kentucky, 448 U.S. 98 (1980); Resumil, Práctica Jurídica de Puerto Rico, *Op.Cit.*, p. 315.

subjetiva que genera una expectativa de intimidad y si la sociedad considera que esa expectativa es razonable.

Una corporación es un ser artificial, invisible e intangible que existe únicamente en la imaginación del derecho.[54] Producto de esa imaginación, el ordenamiento le ha dado personalidad jurídica propia como ente independiente a las personas naturales que fungen como sus accionistas y oficiales.[55] En la esfera federal, como personas jurídicas, las corporaciones tienen derecho a que se les proteja contra registros y allanamientos irrazonables.[56] A igual conclusión hemos llegado bajo la Constitución de Puerto Rico. En RDT Const. Corp. v. Contralor I, resolvimos que, a pesar de que en el caso de las corporaciones, "la naturaleza de la expectativa de intimidad es menor que la que tienen las personas, no por ello están desprovistas de toda protección contra intervenciones irrazonables y arbitrarias por parte del Estado".[57] En particular, en ese caso llegamos a la conclusión de que una corporación tenía una expectativa razonable de intimidad sobre sus cuentas bancarias. Al así resolver, adoptamos de la jurisdicción federal la posición de que las corporaciones pueden gozar de una expectativa

---

[54] Darmouth College v. Woodward, 4 Wheat. 518 (1819).

[55] Artículos 27 a 31 del Código Civil, 31 L.P.R.A. §§ 101-105; Artículos 1.05 y 2.02 de la Ley General de Corporaciones, Ley número 164 de 16 de diciembre de 2009, 14 L.P.R.A. §§ 3505 y 3522.

[56] Silverthorne Lumber Co. v. United States, 251 U.S. 385, 392 (1920).

[57] RDT Const. Corp. v. Contralor I, supra, p. 442.

razonable de intimidad como persona jurídica, _aunque rechazamos_ la idea de que no existe, tanto para las personas naturales como para las jurídicas, una expectativa razonable de intimidad sobre las cuentas bancarias. Ahora bien, contrario a lo que afirma la Opinión de conformidad, no argumentamos que las corporaciones tienen un derecho a la intimidad como si fuesen personas naturales, sino de que están protegidas contra registros y allanamientos irrazonables.

En efecto, la jurisprudencia federal en cuanto a la expectativa de intimidad de una corporación -o cualquier otra persona jurídica, por ejemplo, un sindicato- _dispone una protección mayor_ contra registros irrazonables de lo que reconoce la Opinión de conformidad. Cabe destacar que los casos federales han resuelto _a favor_ de reconocerle legitimación activa a ciertos oficiales y directores de estas personas jurídicas para retar registros ilegales hechos contra dichas entidades corporativas. Por eso, entiendo que, examinado el caso a la luz de esa normativa, el resultado debe ser distinto al que propone la Opinión de conformidad.

En _Wilson v. United States_,[58] resuelto en 1911, el Tribunal Supremo de los Estados Unidos se enfrentó a un requerimiento de documentos corporativos hecho al presidente de una corporación. Éste alegó que dichos documentos corporativos le incriminaban personalmente. El

---

[58] 221 U.S. 361(1911).

Tribunal Supremo federal resolvió que, a menos que el oficial corporativo demostrara la existencia de un privilegio personal, se debía llevar a cabo la producción de documentos.[59] Esto es significativo, pues aun a esa fecha, el Tribunal reconoce escenarios en donde, en efecto, un oficial corporativo puede gozar de un derecho personal que le proteja contra este tipo de requerimientos. Desde Katz, dicho derecho puede existir si se logra demostrar una expectativa razonable de intimidad sobre el lugar registrado o los objetos incautados. Según el Tribual Supremo federal, esto aplicaría igual a si se tratase de documentos corporativos o personales, pues en ambos casos [en el contexto de una reclamación de auto-incriminación], la producción tiende a incriminar.[60] Además, en Wilson v. United States, el Tribunal manifestó que, dado que la corporación solamente puede actuar a través de sus agentes, los tribunales operarán sobre dichos agentes a través de la corporación.[61] Esto contrasta notablemente con la Opinión de conformidad que lleva la ficción corporativa a tal extremo que concluye que los únicos accionistas y oficiales de la corporación no pueden reclamar los derechos de tal corporación para retar un registro a todas luces ilegal, porque ésta es una persona jurídica distinta que el Estado optó por no acusar.

---

[59] *Íd.*, p. 376.

[60] *Íd.*, pp. 378-379.

[61] *Íd.*, p. 377.

La Opinión de conformidad despacha ligeramente las implicaciones del caso de Mancusi v. DeForte, *supra*. En éste, el Tribunal Supremo federal se enfrentó a una controversia muy similar a la de autos. El Estado llevó a cabo un registro de la oficina del presidente de un sindicato.[62] Los documentos allanados, también, le pertenecían al sindicato. Producto de dicho registro y de la evidencia obtenida, se acusó al presidente como persona natural. Éste cuestionó la validez del registro realizado. El Tribunal Supremo de los Estados Unidos le reconoció legitimación activa para presentar dicho reto, a pesar de que la oficina y los documentos eran del sindicato, es decir, una persona jurídica separada.[63] En su análisis, el Tribunal Supremo federal hizo hincapié en que no se trataba de una reclamación a nombre de tercero, asunto que no fue alegado, sino de un análisis independiente de si el oficial sindical gozaba de una expectativa legítima de intimidad en el lugar registrado, a pesar de que, como hemos visto, tanto la oficina como los documentos le pertenecían a la persona jurídica llamada sindicato.[64] A pesar de que no era

---

[62] No hubo controversia alguna respecto al hecho de que la titularidad de la oficina le pertenecía al sindicato como persona jurídica y que no se trataba de una oficina destinada para el uso personal, e incluso exclusivo, del presidente.

[63] Es decir, contrario a lo expresado por la Opinión de conformidad, es posible que, además de la persona jurídica titular del lugar registrado, otra persona natural también tenga una expectativa razonable de intimidad. Que la persona jurídica tenga esa expectativa, y por tanto legitimación, no excluye que otros puedan tenerla también.

[64] Mancusi v. DeForte, *supra*, p. 366, 368.

un espacio en donde el oficial efectuaba asuntos de corte personal, de que era un espacio compartido con otros oficiales, de que la titularidad de la oficina y de los documentos no era de éste, el Tribunal Supremo federal le reconoció legitimación activa para retar el registro. Es decir, más que una invocación de un derecho de tercero, se trata de analizar con detenimiento si los acusados gozan de su propia expectativa legítima de intimidad, la que no es exclusiva de la corporación afectada.

Henzel v. United States[65] es otro caso citado por la Opinión de conformidad que entiendo, respetuosamente, se aplica erróneamente. Este caso apoya la contención de los peticionarios. En Henzel, un oficial corporativo, blanco de una acusación, intentó retar el registro hecho en y contra propiedad corporativa. El Tribunal de Apelaciones federal le reconoció legitimación activa para retar dicho registro y expresó: "Nor does it make any difference that the property seized and the premises searched were owned by a corporation rather than by an individual […] [A]ppellant had an interest in the property seized and premises searched".[66] Es decir, no hay tal cosa como una única persona agraviada por un registro quien, a su vez, es la única con legitimación activa para presentar una moción de supresión. De igual manera, en casos de registros a propiedades corporativas, no es conclusión automática que

---

[65] 296 F.2d 650 (1961).

[66] Íd., pp. 652-653.

únicamente esa persona jurídica sea la que pueda incoar el reto al registro. Si otra persona, en este caso un oficial corporativo, logra demostrar su propia expectativa legítima de intimidad sobre esa propiedad corporativa, tendrá legitimación activa para presentar su moción de supresión. Precisamente eso fue lo que ocurrió en <u>Hanzel</u> y en <u>Mancusi</u>. No se trata de una moción de supresión reclamando un derecho de tercero, sino de un reto propio basado en la existencia de otra persona agraviada por el registro por ésta tener una expectativa legítima de intimidad sobre el lugar registrado o el objeto incautado, independientemente de la titularidad o de que le pertenezca a la persona jurídica separada e independiente de la persona natural que es acusada.[67]

Este razonamiento encuentra eco en el tratadista LaFave quien hace una lectura similar de <u>Mancusi</u>. Nos ilustra LaFave:

> Although the Court in <u>Mancusi</u> quite correctly pointed out that it is not essential to the establishment of standing that the defendant show a property right in the invaded place, it is fair to say that a defendant who does show such a right is most certain to be found to have standing.
>                        […]

---

[67] Como regla general, en la jurisdicción federal no se permite reclamar vicariamente derechos personales como la protección de la Cuarta Enmienda. <u>Rakas v. Illinios</u>, *supra*, pp. 133-134. Véase además LaFave, <u>Search and Seizure</u>, *Op.Cit.*, pp. 126-127. Sobre la legitimación activa de los oficiales corporativos, ésta tiene límites. "This is not to say that every employee of a corporation can attack the illegal seizure of corporate property if the fruits of the search are proposed to be used against him. Each case must be decided on its own facts". <u>Henzel v. United States</u>, *supra*, p. 653.

> [U]se need not inevitably be <u>exclusive</u> for there to be an expectation of privacy […] it still seems necessary to establish that the place searched was rather directly connected with the defendant's responsibilities and activities.
> […]
> Particularly in an otherwise close case, a court may be influenced by the defendant's relationship to or interest in the particular item seized.[68]

### B.

Continuando el análisis desde la perspectiva de la Opinión de conformidad, tenemos que concluir que la jurisprudencia federal aplicable, sumada a nuestras propias protecciones constitucionales sobre intimidad, exigen que le reconozcamos legitimación activa a los aquí peticionarios para retar el registro que se hizo contra las cuentas bancarias de sus corporaciones. Una vez este Tribunal decide aplicar el estándar de expectativa legítima de intimidad para determinar si existe legitimación activa en una moción de supresión, <u>debemos analizar dicha expectativa a la luz del derecho a la intimidad provisto por la Constitución de Puerto Rico</u>. Adoptar la doctrina federal de expectativa legítima de intimidad como estándar para determinar legitimación activa bajo la Regla 234 no conlleva adoptar la definición federal de la intimidad y su alcance y tampoco la menor intensidad de la protección constitucional federal.[69]

---

[68] LaFave, <u>Search and Seizure</u>, *Op.Cit.*, pp. 180, 182-184 (Énfasis suplido).

[69] La Opinión de conformidad reconoce que este es el estado de Derecho actual en Puerto Rico, en cuanto le otorga

(continúa...)

A diferencia de la jurisdicción federal, el derecho a la intimidad en Puerto Rico está recogido expresamente en nuestra Constitución.[70] Hemos resuelto que nuestro análisis sobre la protección contra registros y allanamientos irrazonables tendrá como uno de sus puntos de partida el derecho a la intimidad.[71] Como consecuencia, por "tener apoyo en este derecho preeminente, hemos interpretado las garantías contra registros y allanamientos de forma más amplia que la jurisprudencia constitucional norteamericana".[72] Por tanto, tomando los factores utilizados por la jurisprudencia federal como un mínimo, hemos identificado una serie de criterios adicionales para determinar la existencia de una expectativa legítima de intimidad en cuanto a un registro o allanamiento, ninguno de los cuales es determinante por sí solo. Estos factores son:

(1) El lugar registrado o allanado;

---

legitimación activa a la corporación sobre sus propias cuentas bancarias, no obstante el fallo del Tribunal Supremo federal en United States v. Miller, *infra*. Si se hubiese adoptado totalmente la normativa federal en cuanto a la expectativa legítima de intimidad, tendríamos que resolver que no hay una expectativa legítima de intimidad sobre cuentas bancarias.

[70] Sección 8, Artículo II, Constitución de Puerto Rico.

[71] RDT Const. Corp. v. Contralor I, *infra*, p. 441. "[C]uando en Puerto Rico una parte sostiene que tiene una expectativa razonable de intimidad, su reclamo está amparado en que nuestra Constitución goza de una vitalidad independiente de la Constitución de los Estados Unidos, y en el área del derecho a la intimidad nuestra Carta de Derechos es de factura más ancha que su homóloga federal".

[72] Pueblo v. Rivera Colón, *supra*, p. 681.

(2) La naturaleza y grado de intrusión de la intervención;

(3) El objetivo o propósito de la intervención;

(4) Si la conducta de la persona era indicativa de una expectativa subjetiva de intimidad;

(5) La existencia de barreras físicas que restrinjan la entrada o la visibilidad al lugar registrado;

(6) <u>La cantidad de personas que tienen acceso legítimo al lugar registrado</u>;

(7) <u>Las inhibiciones sociales relacionadas con el lugar registrado</u>.[73]

En <u>Pueblo v. Ramos Santos</u>,[74] resolvimos que un invitado de la dueña de una casa tenía una expectativa de intimidad suficiente como para activar la protección constitucional contra registros y allanamientos irrazonables. En <u>Pueblo v. Santiago Feliciano</u>,[75] analizamos con detenimiento la relación entre el derecho de intimidad y la protección contra registros y allanamientos irrazonables. En dicho caso manifestamos que el "derecho a la intimidad puede ser invocado únicamente por aquella persona que, dentro de las circunstancias particulares del caso, tenga una expectativa real de que su intimidad se respeta y que la sociedad esté dispuesta a reconocer esa expectativa".[76] De lo contrario, no se "puede reclamar la protección del derecho de intimidad".[77]

---

[73] *Íd.*, pp. 684-685. (Énfasis suplido).

[74] 132 D.P.R. 363, 374 (1992).

[75] 139 D.P.R. 361 (1995).

[76] *Íd.*, p. 384.

[77] *Íd.*, pp. 384-385.

El ejemplo más claro de cómo, amparándonos en que nuestra Constitución ofrece una protección mayor en el área de la intimidad que su contraparte federal, hemos diferido de la jurisprudencia federal sobre el grado de protección que se goza como parte de una expectativa legítima de intimidad es, precisamente, la aplicación de esta figura a las cuentas bancarias.

En la jurisdicción federal, no hay una expectativa razonable de intimidad en cuanto a las cuentas bancarias, ya sean personales o corporativas.[78] Muchas jurisdicciones estatales rechazaron esta interpretación estrecha de lo que constituye una expectativa legítima de intimidad que ha sido severamente criticada por los tratadistas.[79] En RDT Const. Corp. v. Contralor I,[80] también rechazamos esa visión estrecha y resolvimos que, en Puerto Rico, una persona tiene una expectativa legítima de intimidad sobre sus cuentas bancarias. Por tanto, cualquier análisis sobre legitimación activa que se fundamente sobre la figura de expectativa legítima de intimidad debe incluir, a diferencia de la jurisprudencia federal al respecto, que tal expectativa existe con relación a una cuenta bancaria.

Incluso, más de tres décadas después de Miller, la doctrina norteamericana ha ido reconociendo las deficiencias de esa decisión y se ha encaminado por sendas

---

[78] United States v. Miller, 425 U.S. 435 (1976).

[79] Brennan, *Op.Cit.*, p. 497; LaFave, Search and Seizure, Vol. (2004), p. 190. Véase además RDT Const. Corp. v. Contralor I, *infra*.

[80] 141 D.P.R. 424 (1996).

de mayor protección en cuanto a lo que conlleva una expectativa razonable de intimidad. Recientemente, el Tribunal de Apelaciones federal para el Sexto Circuito determinó que existe una expectativa legítima de intimidad en los correos electrónicos almacenados por los proveedores de dichos servicios.[81] Se trata de un reconocimiento de que estos tipos de transacciones son "prácticamente una necesidad […] para participar adecuadamente en la vida económica".[82] El tratadista LaFave nos explica que, para indagar en cómo se analiza la existencia de una expectativa razonable de intimidad como parte del mínimo constitucionalmente protegido, se debe tener en mente que se trata, más que del resultado de un derecho titular, de la existencia de un interés de la persona que lo reclama en el lugar registrado o el objeto incautado.[83] En cuanto a su aplicación para determinar la legitimidad del reclamante, nos refiere al criterio elaborado en Mancusi v. DeForte:[84] "whether the conduct which the defendant wants to put in issue involved an intrusion into his reasonable expectation of privacy".[85]

---

[81] U.S. v. Warshak, No. 08-4085, United States Court of Appeals for the Sixth Circuit.

[82] RDT Const. Corp. v. Contralor I, *supra*, p. 441.

[83] LaFave, Search and Seizure, *Op.Cit.*, p. 128.

[84] 392 U.S. 364 (1968).

[85] LaFave, Search and Seizure, *Op.Cit.*, p. 128. (Énfasis suplido).

Me parece innegable que el caso de <u>RDT Const. Corp.</u> <u>v. Contralor I</u> es el determinante en la controversia de autos.[86] Allí, partiendo de la premisa de que puede existir una expectativa legítima de intimidad sobre las cuentas bancarias, resolvimos que para determinar si ésta, en efecto, existe, <u>no debemos auscultar la titularidad de las</u> <u>cuentas</u>.[87] En <u>RDT Const. Corp. v. Contralor I</u> no tuvimos necesidad de ir más allá de la expectativa de cada acusado sobre su propia cuenta bancaria, ante el hecho de que en ese momento se acusó tanto a las personas naturales como a la persona jurídica. Por tanto, cada una de ellas pudo retar exitosamente los registros a sus respectivas cuentas bancarias. No obstante, el factor determinante en aquel momento no fue que cada acusado era titular de su propia cuenta: "El criterio <u>decisivo</u> para determinar si se trata de una información protegida constitucionalmente es la expectativa razonable de intimidad de <u>los depositantes</u>".[88] Es decir, <u>incluso aplicando el criterio adoptado por la</u> <u>Opinión de conformidad</u>, el factor decisivo no es quién es dueño de las cuentas, lo que corresponde analizar es si

---

[86] De igual forma, estimo que se llegaría a la misma conclusión de una lectura de <u>Mancusi</u> y de <u>Hanzel</u>.

[87] Por un lado, la Opinión de conformidad insiste en que la titularidad no es el factor determinante para reconocer legitimación activa para retar un registro. Sin embargo, llega a la conclusión de que la corporación es la <u>única</u> que puede retar el mismo, <u>excluyendo</u> a los demás, porque es, precisamente, la <u>titular</u> de las cuentas. No discute si, <u>además</u> de la corporación, los peticionarios tienen su <u>propia</u> expectativa de intimidad sobre cuentas que incluían <u>fondos personales de ellos</u>.

[88] <u>RDT Cont. Corp. v. Contralor I</u>, *supra*, p. 442.

los peticionarios cuentan con una expectativa razonable de intimidad <u>sobre la información en las cuentas bancarias de sus corporaciones</u>.[89] Una correcta aplicación de <u>RDT Const. Corp. v. Contralor</u>, <u>Mancusi</u> y <u>Hanzel</u> nos dice que sí.

IV.

No hay duda de que los peticionarios albergan una expectativa razonable de intimidad sobre sus cuentas bancarias personales. Eso fue resuelto por <u>RDT Const. Corp. v. Contralor I</u> y la determinación del Tribunal de Primera Instancia a esos efectos advino final y firme. De igual manera, no hay duda de que la persona jurídica llamada corporación alberga una expectativa razonable de intimidad sobre sus propias cuentas. Eso también fue resuelto por <u>RDT Const. Corp. v. Contralor I</u>. Este asunto no está ante nuestra consideración, pues el Estado <u>optó por no acusar a la persona jurídica</u>. La interrogante es: ¿tienen los peticionarios una expectativa razonable de intimidad sobre las cuentas bancarias de sus corporaciones? La prueba nos obliga a contestar en la afirmativa, si empleamos los criterios identificados por nuestro ordenamiento como indicativos de la existencia de una expectativa legítima de intimidad.[90]

---

[89] Como hemos visto, ya la jurisdicción federal abandonó el estándar estrecho de titularidad para conferir legitimación activa y la ha reemplazado por una más amplia: la expectativa legítima de intimidad.

[90] <u>Pueblo v. Rivera Colón</u>, *supra*, p. 684. A igual conclusión se llegaría, incluso si se emplea la definición de expectativa legítima de intimidad que adopta la Opinión de conformidad.

(continúa...)

Primeramente, el lugar registrado es una cuenta bancaria y hemos resuelto que los depositantes tienen sobre esas cuentas una expectativa razonable de intimidad.[91] En segundo lugar, la naturaleza y grado de intrusión de la intervención gubernamental en este caso es total. En tercer lugar, el objetivo y propósito de la intervención denota la existencia de una expectativa de privacidad en tanto el Estado registró la cuenta bancaria corporativa como parte de una investigación contra los peticionarios. En cuarto lugar, por su propia característica incorpórea y por la naturaleza de las transacciones bancarias en nuestro país, es evidente la existencia de barreras que restringen el acceso al lugar registrado. En quinto lugar, no dudamos, como resolvimos en RDT Const. Corp. v. Contralor I, que hay un reconocimiento social de una expectativa de intimidad en las transacciones bancarias, independientemente de la titularidad de la cuenta involucrada.

De otra parte, los peticionarios eran las únicas personas naturales que tenían acceso a dichas cuentas corporativas, pues eran los únicos oficiales de la corporación. Si bien entiendo que esto no conlleva que la corporación sea un *alter ego* de los peticionarios ni que se deba descorrer el velo corporativo, sí es revelador a la luz del criterio de "la cantidad de personas que tienen acceso legítimo al lugar registrado" como uno de los

---

[91] RDT Const. Corp. v. Contralor I, *supra*.

factores a considerarse para determinar la existencia de una expectativa legítima de intimidad. Nadie que no fuese los peticionarios tenía acceso a las cuentas registradas.

Finalmente, analizamos el criterio de si la conducta de los peticionarios era indicativa de una expectativa subjetiva de intimidad. La declaración jurada de la propia investigadora del Departamento de Hacienda, la señora Lydia E. Márquez Vázquez, demuestra que, efectivamente, los peticionarios exhibieron una conducta indicativa de tal expectativa. Según su investigación, la cuenta bancaria corporativa se nutrió de la línea de crédito personal del señor Costas Elena con una aportación de $13,000 que luego fueron devueltos.[92] También surge que se depositaron fondos en la cuenta personal de los peticionarios provenientes de las cuentas corporativas.[93] La señora Márquez Vázquez también relata de que hubo "desembolsos realizados de las cuentas bancarias de las corporaciones, por concepto de pagos de tarjetas de créditos perteneciente al [señor] Costas Elena y su esposa Hazel Russel, pagos por concepto de matrícula de sus hijos a universidades en Estados Unidos y pagos hechos al [señor] Costas Elena".[94] Además, hubo "pagos a suplidores tales como Paradise Pools por la cantidad de $25,800 con relación a cierta piscina, y un pago a Marble & Stone por

---

[92] Declaración Jurada de la CPA Lydia E. Márquez Vázquez del 15 de diciembre de 2004, p. 3.

[93] *Íd.*, p. 4.

[94] *Íd.*

la cantidad de $10,000 por el 'cambio de pisos'".[95] Estas transacciones fueron parte de una costumbre marcada de los peticionarios de <u>confundir</u> sus cuentas y pagos personales con las cuentas corporativas. Según la investigadora del Departamento de Hacienda:

> [S]e podía apreciar en algunos casos una inconsistencia en cuanto al nombre de la entidad a favor de quien se emitían los pagos y la cuenta en la que finalmente eran depositadas. Es decir, se podía apreciar que pagos hechos a favor del [señor] Luis Costas Elena eran depositados en algunas cuentas de las corporaciones y viceversa, pagos hechos a nombre de las corporaciones eran depositados en la cuenta bancaria del [señor] Luis Costas Elena o en las cuentas de las otras corporaciones.[96]

De lo anterior se desprende que los peticionarios depositaban fondos personales en la cuenta corporativa y que de esta cuenta se desembolsaban pagos para gastos personales de ellos. Solamente los peticionarios tenían acceso a dichas cuentas. La única conclusión razonable de los hechos de este caso es que los peticionarios gozaban de una expectativa legítima de intimidad sobre las cuentas corporativas <u>suficiente para presentar una moción de supresión</u> al amparo de la Regla 234 de Procedimiento Criminal.[97] Sin lugar a dudas, éstos fueron 'personas

---

[95] *Íd.*, p. 10.

[96] *Íd.*

[97] La Opinión de conformidad no explica por qué si los peticionarios depositaban fondos <u>personales</u> en las cuentas corporativas y usaban dicha cuenta para hacer pagos igualmente personales, ello no crea una expectativa razonable de intimidad a favor de éstos.

agraviadas' por el registro ilegal llevado a cabo por el Estado.

V.

Como punto final, me preocupa seriamente que con esta Sentencia, el Tribunal le esté dando un perfecto subterfugio al Estado para llevar a cabo registros ilegales sin que se pueda solicitar la supresión de la evidencia así obtenida, permitiendo de esa forma que el Estado burle las protecciones constitucionales del pueblo y se beneficie de sus actos ilícitos. Consistentemente hemos rechazado el uso de subterfugios para que el Estado se beneficie de sus propios actos ilegales, particularmente en cuanto a evidencia obtenida tras registros ilícitos. En Toll y Sucn. Rivera Rojas v. Adorno Medina, *supra*, permitimos el uso de evidencia ilegalmente obtenida en un pleito civil, precisamente porque el Estado no era parte en ese pleito civil. En dicho caso, el elemento decisivo fue "si el gobierno es o no una parte en el caso, o de alguna manera se beneficia en la admisión de la evidencia ilegalmente obtenida".[98] Sobre la relación entre la regla de exclusión constitucional y las actuaciones gubernamentales, manifestamos lo siguiente:

> Según señaláramos, su propósito es disuadir toda conducta de los agentes del Gobierno que infrinjan la Constitución o la ley. La solución adoptada por nuestra Constitución para prevenir dicha conducta es la más drástica: inadmisibilidad. Ello responde a

---

[98] Toll y Sucn. Rivera Rojas v. Adorno, *supra*, p. 360.

la visión de que en la relación <u>gobierno-ciudadano</u>, los intereses y objetivos sociales implicados justifican la adopción de un remedio tan extraordinario en todo caso en que el Gobierno pretenda utilizar dicha evidencia contra quien se le han violado sus derechos constitucionales.[99]

En <u>Pueblo v. Valenzuela</u>, declaramos que uno de los propósitos fundamentales de la protección constitucional de la sección 10 del Artículo II es, precisamente, "<u>no permitir que el Gobierno se beneficie de sus actos ilícitos</u>".[100]

Si el Estado registra las cuentas de una corporación de forma ilegal para encausar a sus oficiales como personas naturales, <u>y no acusa a la corporación como persona jurídica</u>, éste puede, impunemente, aprovecharse de la evidencia así obtenida. No podemos olvidar que, al fin y al cabo, las corporaciones son entes incorpóreos. No acusar a la corporación como persona jurídica pero sí acusar a sus únicos accionistas y oficiales en su carácter personal puede constituir una tentación para, como en el caso de autos, prescindir de la acusación contra la ficción jurídica para poder aprovecharse de un registro ilegal. Esto es intolerable en nuestro ordenamiento democrático.

Permitir este tipo de mecanismo tan fácilmente evasivo de las protecciones constitucionales es sinónimo con eliminar la protección. Cada vez que el Estado quiera

---

[99] *Íd.*, p. 362 (Énfasis en original).

[100] <u>Pueblo v. Valenzuela</u>, *supra*, p. 539. (Énfasis suplido).

acusar a los accionistas u oficiales de una persona jurídica, puede ilegalmente registrar las cuentas bancarias de la corporación y beneficiarse de dicha conducta si simplemente opta por no acusar a la persona jurídica, la que evidentemente no puede ser privada de su libertad por su forma incorpórea, e ir directamente contra sus oficiales en su carácter personal. Hacer eso permite al gobierno reducir la protección constitucional a meras palabras.[101] El gobierno es el primero que debe respetar nuestro ordenamiento constitucional y no debe permitirse que esquive las protecciones constitucionales aprovechándose de la ficción jurídica corporativa.[102] Hoy,

---

[101] Silverthorne Lumber Co. v. United States, 251 U.S. 385, 392 (1920). "[T]hat the government may benefit reduces the Fourth Amendment to a form of words". Véase además Go-Bart Co. v. United States, 282 U.S. 344, 357 (1931). "The Amendment is to be liberally construed and all owe a duty of vigilance for its effective enforcement lest there shall be impairment of the rights for the protection of which it was adopted". Por su parte, LaFave nos advierte en cuanto a este tipo de mecanismo: "More troublesome is the status of a person, charged as an individual, *vis-à-vis* a search of his place of business when that business is being operated as a corporation". LaFave, Search and Seizure, *Op.Cit.*, p. 180.

[102] Igual advertencia ha hecho el Tribunal Supremo de los Estados Unidos: "No court should condone the unconstitutional […] behavior of those who planned and executed [the illegal search]". United States v. Prayer, 447 U.S. 727, 733 (1980). En este caso, una agencia gubernamental se valió de un tercero privado para apropiarse de un maletín propiedad de otra persona. La persona que atacó dicho registro no prosperó, sin embargo, porque no logró establecer una expectativa razonable de intimidad sobre el maletín que le pertenecía a un tercero y cuya evidencia obtenida le incriminaba. Por tanto, no había violación a la Cuarta Enmienda. No obstante, el Tribunal Supremo federal fustigó la estrategia empleada por el gobierno.

desafortunadamente, el Tribunal bendice tal conducta. No podemos estar de acuerdo.

Por los fundamentos anteriormente expuestos, disiento.

Liana Fiol Matta
Jueza Asociada